Docket No. 105577.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

JERRI BLOUNT, Appellant, v. JOSEPH STROUD *et al.*, Appellees.

*Opinion filed January 23, 2009.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff, Jerri Blount, appeals from a judgment of the appellate court reversing a multimillion dollar judgment entered by the Cook County circuit court following a jury trial on plaintiff's federal and state retaliation claims against defendant, Jovon Broadcasting Corporation (Jovon). See 376 Ill. App. 3d 935. The principal issue on appeal is whether the circuit court had subject matter jurisdiction over plaintiff's claims or, stated differently, whether plaintiff's sole source of redress was through the administrative procedures set forth in the Illinois Human Rights Act (Act) (775 ILCS 5/1–101 (West 2000)).

We hold that the circuit court had jurisdiction over plaintiff's claims. We therefore reverse the judgment of the appellate court and remand to that court for further review.

## BACKGROUND

On February 23, 2001, plaintiff filed a multicount complaint against Jovon and Joseph Stroud, Jovon's owner and general manager, alleging various claims arising out of plaintiff's employment and discharge by defendants. The complaint was amended several times. Relevant here is plaintiff's fifth amended complaint. Of the several counts plaintiff pled, the present appeal involves only counts III and V.

In count III, styled a "retaliation" claim, plaintiff alleged that defendants took adverse actions against her, including terminating her employment, in violation of the federal Civil Rights Act of 1866 (42 U.S.C. §1981 (2000)). The gravamen of plaintiff's federal claim is that Stroud (an African-American) retaliated against plaintiff (also an African-American) because plaintiff supported Bonnie Fouts (a Caucasian coworker) in Fouts' federal discrimination suit against Jovon. According to the complaint, plaintiff witnessed some of the offensive conduct of which Fouts complained, and advised Stroud that she believed Fouts' complaints were legitimate. She also allegedly advised Stroud that she would testify truthfully in support of Fouts, but that Stroud instructed plaintiff not to testify against him in any proceeding involving Fouts' claims or to otherwise aid Fouts. According to the complaint, because plaintiff refused to yield, defendants took adverse and retaliatory actions against her, including threats and intimidation and, eventually, suspension and termination of employment in October 2000. Although count III was directed against both defendants, plaintiff later elected to proceed solely against Jovon.

In count V, plaintiff alleged a common law claim for retaliatory discharge against Jovon. Plaintiff alleged:

> "It is the public policy of the State of Illinois that witnesses testify truthfully under oath, and in government proceedings. It is a violation of the public policy of the State of Illinois to interfere with the testimony of a witness before a Court of law or public body, or to attempt to compel a witness to testify untruthfully. Perjury is a criminal offense in the State of Illinois. 720 ILCS 5/32–2."

Plaintiff alleged that defendants discharged her, in part, because she refused to commit perjury in Fouts' discrimination proceedings, and that such conduct violated Illinois public policy.

Early on in the litigation, defendants maintained that plaintiff's retaliation claims were not properly before the circuit court. Defendants' arguments, first raised as affirmative defenses, were later encompassed in a section 2–619.1 motion to dismiss. See 735 ILCS 5/2–619.1 (West 2002). In their dismissal motion, defendants argued that the circuit court lacked jurisdiction to adjudicate plaintiff's retaliation claims. Defendants relied on section 8–111(C) of the Act, which states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8–111(C) (West 2000). Defendants argued that plaintiff's federal and state retaliation claims fell squarely within the prohibitions contained in the Act (see 775 ILCS 5/6–101(A) (West 2000)), and that plaintiff was therefore required to seek redress through the Act's administrative procedures. Defendants also argued that plaintiff's claims were "inextricably linked" to a civil rights violation, as set forth in the Act, and that the Act thus preempted plaintiff's claims. The trial court rejected these arguments and the case eventually proceeded to a jury trial on the fifth amended complaint.

We find it unnecessary to recount the trial testimony because the sufficiency of the evidence is not at issue. We do note, however, that following the close of the evidence, the parties agreed that one instruction encompassing both retaliation claims would be given to the jury, rather than separate instructions on each of the two counts. The instruction was intended to simplify matters for the jury. The jury was instructed:

> "The plaintiff has asserted the following three claims against the defendants:
>
> One, retaliation and wrongful termination against defendant, Jovon, only[.]
>
>             * * *
>
> *** [P]laintiff alleges that she was terminated by defendant, Jovon, in whole or in part in retaliation for her protected activities, including her refusal to agree to commit

perjury and her support of Ms. Fouts' claim of discrimination, and/or or [*sic*] opposing defendants' treatment of Ms. Fouts.

To succeed on this claim, plaintiff must prove by a preponderance of the evidence that her protected activity was a substantial motivating factor in defendant, Jovon's, decision to terminate her employment."

The jury returned a verdict in favor of plaintiff on her retaliation claims, awarding $257,350 in back pay, $25,000 for pain and suffering, and $2,800,000 as punitive damages. The jury found in favor of defendants on plaintiff's other theories of recovery. The trial court entered judgment on the jury verdict.

Defendants filed a posttrial motion arguing, in relevant part, that defendants were entitled to judgment notwithstanding the verdict on plaintiff's federal and state retaliation claims because the circuit court lacked jurisdiction.[1] Defendants essentially reargued their earlier dismissal motion, maintaining that plaintiff's sole recourse was before the Department of Human Rights. Defendants did not challenge the sufficiency of the evidence with respect to either retaliation claim. While defendants' posttrial motion was pending, plaintiff filed a petition for attorney fees and expenses. Plaintiff argued that as the prevailing party in her section 1981 claim, she was entitled to fees and expenses pursuant to section 1988 (42 U.S.C. §1988 (2000)). The trial court denied defendants' posttrial motion and granted plaintiff's fee petition, awarding fees and costs in the aggregate amount of $1,182,832.10. Defendants appealed.

The appellate court reversed, holding that the Act "deprives Illinois circuit courts of subject matter jurisdiction over all civil rights claims, regardless of whether they are brought under state or federal law." 376 Ill. App. 3d at 949. Because the circuit court lacked jurisdiction to entertain plaintiff's retaliation claims, the appellate court reversed the denial of defendants' motion for judgment notwithstanding the verdict as to those claims. 376 Ill. App. 3d at

---

[1]Although the retaliation claims on which plaintiff prevailed were directed solely against Jovon, both defendants pursued appeal, and the parties have continually referred to "defendants," in the plural, in their briefs. For consistency, we will do the same.

950. We allowed plaintiff's petition for leave to appeal (see 210 Ill. 2d R. 315), and allowed the National Employment Lawyers Association, the Employment Discrimination Project of the University of Chicago Law School's Edwin F. Mandel Legal Aid Clinic, and the Illinois Trial Lawyers Association to file a joint brief *amicus curiae* (see 210 Ill. 2d R. 345). Because this appeal presents only issues of law, our review proceeds *de novo*. See *In re A.H.*, 207 Ill. 2d 590, 593 (2003) (applying *de novo* standard to jurisdiction issue); *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 89 (2002) (applying *de novo* standard to review of the denial of a motion for judgment notwithstanding the verdict).

## ANALYSIS

### I. Illinois Human Rights Act

The Act, adopted in 1979, is intended to secure for all individuals in Illinois freedom from unlawful discrimination in connection with employment, real estate transactions, access to financial credit, and availability of public accommodations. Pub. Act 81–1216, eff. in part December 6, 1979 (see Pub. Act 81–1216, §11–101); 775 ILCS 5/1–102(A) (West 2000). The Act consolidated what had been a patchwork of antidiscrimination law in Illinois by repealing various acts, but incorporating their "principal design, purpose or intent." Pub. Act 81–1216, §10–108 (repealing the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1979, ch. 38, pars. 65–21 through 65–31), the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, pars. 851 through 867), the Illinois Fairness in Lending Act (Ill. Rev. Stat. 1979, ch. 95, pars. 301 through 307), the Illinois Equal Employment Opportunity Act (Ill. Rev. Stat. 1979, ch. 127, pars. 63b71 through 63b90), the act which created a Commission on Human Relations (Ill. Rev. Stat. 1979, ch. 127, par. 214.1 through 214.5a), the act which prohibited age discrimination in employment (Ill. Rev. Stat. 1979, ch. 48, pars. 881 through 887), the act which prohibited conditions in leases excluding children (Ill. Rev. Stat. 1979, ch. 80, pars. 37, 38), and that part of the Criminal Code of 1961 which created the offense of a violation of civil rights (Ill. Rev. Stat. 1979, ch. 38, pars. 13–1 through 13–4)).

To accomplish its objective, the Act created the Department of Human Rights and the Human Rights Commission. 775 ILCS 5/1–103(E), (H), 8–101(A) (West 2000). Generally, the Department investigates "charges" brought by "aggrieved parties" claiming "civil rights violations," as defined in the Act. See 775 ILCS 5/1–103(B) through (D), 7–101(B), 7A–102(C), 7B–102(C) (West 2000). The Commission reviews Department decisions and adjudicates civil rights "complaints." 775 ILCS 5/1–103(F), 8–103, arts. 8A, 8B (West 2000). The statute, together with the Department's and Commission's rules and regulations, establish comprehensive administrative procedures governing the disposition of alleged civil rights violations. See 775 ILCS 5/arts. 7A, 7B, 8A, 8B (West 2000); 56 Ill. Adm. Code §2520.10 *et seq.*; 56 Ill. Adm. Code §5300.10 *et seq.*

At the time the complaint in the present case was filed, the Act, with one exception not relevant here, did not expressly authorize private suits.[2] In fact, the Act expressly limited the court's jurisdiction. 775 ILCS 5/8–111(C) (West 2000). Section 8–111(C) states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8–111(C) (West 2000).

Among the civil rights violations identified in the Act is one for "retaliation." 775 ILCS 5/6–101(A) (West 2000). Pursuant to section 6–101, it is a civil rights violation for a person to:

> "Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in higher education, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or

---

[2]The sole exception is found in article 8B of the Act. Where a charge of discrimination in a real estate transaction results in the filing of a complaint with the Commission, the Act provides that a party "may elect to have the claims asserted in that complaint decided in a civil action in a circuit court of Illinois." 775 ILCS 5/8B–102(A) (West 2000).

participated in an investigation, proceeding, or hearing under this Act[.]" 775 ILCS 5/6–101(A) (West 2000).

The parties' dispute whether, in light of sections 8–111 and 6–101, the circuit court had jurisdiction over plaintiff's common law retaliatory discharge claim and her federal section 1981 retaliation claim. We consider each claim in turn.

## II. Common Law Retaliatory Discharge Claim

Plaintiff's common law claim was based on the allegations that defendants terminated her employment in retaliation for her refusal to commit perjury in the Fouts' case, and that defendants' conduct violated Illinois public policy. Our analysis of whether the circuit court had jurisdiction over this claim is guided by this court's decisions in *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507 (1994), and *Maksimovic v. Tsogalis*, 177 Ill. 2d 511 (1997).

In *Geise*, the plaintiff brought a common law tort action against her former employer for the negligent hiring and retention of its national sales manager. Plaintiff alleged that the manager had sexually harassed her, then caused her to be fired from her job when she reported his misconduct to the company. The parties agreed that if the plaintiff's common law action was construed as seeking redress for a "civil rights violation" within the meaning of the Act, the circuit court lacked jurisdiction to consider it. Although the conduct to which the plaintiff claimed she was subjected fell within the Act's definition of sexual harassment (Ill. Rev. Stat. 1989, ch. 68, par. 2–101(E)(3)), the plaintiff maintained that the manager's sexual harassment was separate and distinct from her tort claims. The tort claims, she argued, were predicated on independent policy considerations and could not be construed as alleging a civil rights violation under the Act, so as to trigger the Act's jurisdictional bar. We rejected this argument. We held that the concept of sexual harassment is "inextricably linked" to plaintiff's claims of negligent hiring and negligent retention. *Geise*, 159 Ill. 2d at 516-17. "Absent the allegations of sexual harassment," the plaintiff "would have no independent basis for imposing liability" on the company. *Geise*, 159 Ill. 2d at 516-17.

In *Maksimovic*, as in the *Geise* case, we considered whether the plaintiff's common law tort claims against her employer were

inextricably linked with claims of sexual harassment so as to divest the circuit court of jurisdiction under section 8–111(C) of the Act. The plaintiff, who worked as a waitress, quit her job after her employer allegedly made repeated sexual advances toward her. The employer allegedly ordered her to perform oral sex, touched her inappropriately, attempted to kiss her, and confined her to a walk-in cooler where he made sexual advances. The plaintiff filed a sexual harassment complaint with the Human Rights Commission, and several months later, filed a civil suit in the circuit court alleging assault, battery, and false imprisonment. The circuit court determined that it lacked subject matter jurisdiction because the plaintiff's tort claims were in the nature of sexual harassment and granted the employer's summary judgment motion. The appellate court, relying on *Geise*, affirmed. *Maksimovic v. Tsogalis*, 282 Ill. App. 3d 576, 586 (1996). This court reversed, stating that the appellate court's reading of *Geise* was "overly broad." *Maksimovic*, 177 Ill. 2d at 516. We explained:

> "Although the plaintiff in *Geise* dressed her claims as 'negligent hiring' and 'negligent retention,' the allegations of negligence on the part of the employer were premised on the allegation that the employer hired and retained a manager who engaged in sexual harassment. *Geise*, 159 Ill. 2d at 518. Absent the Act's prohibition of sexual harassment, the employer's hiring and retention of an employee whose conduct created a hostile work environment would not have been an actionable tort. That is to say, in *Geise* the Act furnished the legal duty that the defendant was alleged to have breached. *** The rule from *Geise* is not that the Act precludes the circuit court from exercising jurisdiction over *all* tort claims related to sexual harassment. Rather, whether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." (Emphasis in original.) *Maksimovic*, 177 Ill. 2d at 516-17.

We held that under the standard of *Geise,* the plaintiff's claims of assault, battery, and false imprisonment were not inextricably linked to her claim of sexual harassment. The plaintiff alleged sufficient

facts to establish the elements of these long-recognized torts, without reference to the legal duties created by the Act. Thus, the circuit court could exercise jurisdiction over the plaintiff's tort claims. *Maksimovic*, 177 Ill. 2d at 517. Although we acknowledged the policy preference in favor of consolidating litigation, we concluded that the legislature must have been aware of the potential for duplicative litigation when it adopted the Act. *Maksimovic*, 177 Ill. 2d at 517 n.2. Thus, the plaintiff's filing of a complaint with the Commission did not adversely affect the circuit court's jurisdiction.

Finally, we explained that our holding in *Maksimovic*, like our holding in *Geise*, was based on the language of the Act. *Maksimovic*, 177 Ill. 2d at 517-18. A legislative intent to abrogate the common law must be clearly expressed. A plain reading of the Act reveals no legislative intent to abolish all common law torts factually related to sexual harassment. *Maksimovic*, 177 Ill. 2d at 518. Moreover, because an action to redress a civil rights violation has a purpose distinct from a common law tort action, we concluded that the exclusive jurisdiction provision in the Act "was intended to promote the efficient and uniform processing of state civil rights claims–*not* common law tort claims." (Emphasis in original.) *Maksimovic*, 177 Ill. 2d at 518.

Applying the standard of *Geise* and *Maksimovic* to the present case, we hold that the circuit court had subject matter jurisdiction over plaintiff's common law retaliatory discharge claim.

The tort of retaliatory discharge was first recognized by this court in 1978, one year prior to the legislature's adoption of the Act. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978). "The tort is an exception to the general rule that an 'at-will' employment is terminable at any time for any or no cause." *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128 (1981). To establish a retaliatory discharge claim, the plaintiff must plead and prove that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 529 (1988). Plaintiff here alleged that she was discharged because she refused to commit perjury in the Fouts' case, in violation of the public policy of this state embodied in the statute which criminalizes perjury. See 720 ILCS 5/32–2 (West 2000) (establishing and defining the offense of perjury, a Class 3 felony).

This court has recognized that actions for retaliatory discharge have been allowed where the employee was discharged for refusing to violate a statute, including a statute which makes the commission of perjury unlawful. *Palmateer*, 85 Ill. 2d at 130, citing *Petermann v. International Brotherhood of Teamsters Local 396*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959). Accord *Northeast Health Management, Inc. v. Cotton*, 56 S.W. 3d 440 (Ky. App. 2001); *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818 (1985), *overruled on other grounds by Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997).

Like the plaintiff in *Maksimovic*, plaintiff here established a basis for imposing liability on defendants independent of the Act, *i.e.*, without reference to the legal duties created by the Act. See *Maksimovic*, 177 Ill. 2d at 517. Thus, it cannot be said that plaintiff's retaliatory discharge claim is "inextricably linked" to a civil rights violation, and the jurisdictional bar of section 8–111 is not triggered. We recognize that plaintiff's allegation that she was discharged in retaliation for her refusal to commit perjury in the Fouts' case could be construed as retaliation for opposing unlawful discrimination–a violation of the Act's retaliation provision. See 775 ILCS 5/6–101 (West 2000). Unlike the plaintiff in *Geise*, however, plaintiff need not and does not rely upon the public policy embodied in the Act to satisfy the elements of her common law tort claim.

Our holding in the present case, as in *Maksimovic*, rests on the language of the Act. The statutory provision at issue here–section 8–111–provides an exclusive remedy for state "civil rights violations," as defined in the Act, but makes no mention of common law tort actions. "A legislative intent to abrogate the common law must be clearly and plainly expressed." *Maksimovic*, 177 Ill. 2d at 518. Nothing in the Act indicates an intent to abolish all common law torts factually related to incidents of retaliation. Accordingly, we conclude that plaintiff's claim for retaliatory discharge was properly before the circuit court.

*Corluka v. Bridgford Foods of Illinois, Inc.*, 284 Ill. App. 3d 190 (1996), cited by defendants, does not support a different result. *Corluka* involved a civil complaint alleging, among other things, retaliatory discharge. The plaintiff claimed that after reporting a supervisor's sexual harassment of other employees, the plaintiff was

demoted and later discharged. The appellate court upheld the dismissal of the retaliatory discharge count, holding it was preempted by the Act. *Corluka*, 284 Ill. App. 3d at 193-94, citing 775 ILCS 5/8–111 (West 1994). Although *Corluka* did not consider whether, under the standard in *Geise*, the plaintiff's claim was "inextricably linked" to a civil rights violation, its holding is consistent with *Geise*. In both cases, the Act furnished the legal duty on which the plaintiff relied. That is, absent the Act's prohibition of sexual harassment, the employer's conduct in both *Geise* and *Corluka* would not have been actionable. Thus, the plaintiff's retaliatory discharge claim in *Corluka* was inextricably linked to a civil rights violation. Here, however, as already stated, plaintiff has an independent basis for her retaliatory discharge claim–the state's public policy against perjury, embodied in the state's criminal code. See 720 ILCS 5/32–2 (West 2000).

The appellate court reached a contrary conclusion based, in part, on its determination that the evidence adduced at trial does not support plaintiff's allegation that she refused to commit perjury. 376 Ill. App. 3d at 943-44. Defendants, however, never challenged the sufficiency of the evidence in their posttrial motion. Even if defendants had challenged the sufficiency of the evidence, the reviewing court's determination of that issue is irrelevant to the separate issue of the circuit court's jurisdiction over plaintiff's retaliatory discharge claim. "[S]ubject matter jurisdiction does not depend upon the ultimate outcome of the suit. A party may bring unsuccessful as well as successful suits in the circuit court." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 340-41 (2002). Thus, a court's jurisdiction does not depend upon the proofs at trial. Rather, the court's jurisdiction is dependent upon whether the plaintiff's case, as framed by the complaint or petition, presents a justiciable matter. *Belleville Toyota*, 199 Ill. 2d at 334. Plaintiff here successfully invoked the jurisdiction of the circuit court. Whether plaintiff later proved her case is beside the point.

For similar reasons we reject defendants' argument that the manner in which the jury was instructed impacts the court's subject matter jurisdiction. See 376 Ill. App. 3d at 942. Defendants maintain that the single retaliation instruction given to the jury demonstrates that plaintiff's retaliatory discharge claim "went far beyond a claim solely involving her alleged refusal to commit perjury," thus bringing

the claim within the coverage of section 6–101 and triggering the jurisdictional bar of section 8–111. A fair reading of count V of the complaint, however, reveals that plaintiff's retaliatory discharge claim is not as broad as defendants suggest. Count V clearly identified the public policy on which plaintiff relied, citing the perjury statute. See 720 ILCS 5/32–2 (West 2000). The essence of count V is that plaintiff was fired because she refused to perjure herself in the Fouts' case.

Assuming the jury instructions on plaintiff's retaliation claims were less than perfect, any error in instructing the jury is simply that–a trial error. The jury instructions–like the proofs at trial–do not somehow divest the circuit court of the subject matter jurisdiction it earlier acquired. See *In re M.W.*, No. 104519, slip op. at 11 (January 23, 2009) ("Error or irregularity in a proceeding, while it may require reversal of the court's judgment on appeal, does not oust subject matter jurisdiction once it is acquired").

Plaintiff's claim for retaliatory discharge was properly before the circuit court.

### III. Section 1981 Claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts *** as is enjoyed by white citizens." 42 U.S.C. §1981(a) (2000). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b) (2000).

The reach of section 1981 was disputed in the trial and appellate courts, with defendants arguing that section 1981 does not include a prohibition against retaliation for opposing discrimination. The appellate court did not decide the issue, but noted that the majority of the federal courts of appeal have concluded that section 1981 "provides an avenue of recourse for individuals who have suffered retaliation for advocating the rights of those protected under section 1981." 376 Ill. App. 3d at 945. The United States Supreme Court has since held that section 1981 encompasses a complaint of retaliation

against a person who has complained about a violation of another person's contract-related right. *CBOCS West, Inc. v. Humphries*, 553 U.S. ___, ___, 170 L. Ed. 2d 864, 869, 128 S. Ct. 1951, 1954 (2008). Plaintiff's allegation that defendants retaliated against her for her support of coworker Bonnie Fouts' federal discrimination suit fits within the Supreme Court's holding. Thus, any question as to whether plaintiff properly pled a section 1981 claim has been resolved, and we turn to the question of the circuit court's subject matter jurisdiction over that claim.

Defendants argue that this court need not consider the jurisdiction issue because plaintiff did not submit a section 1981 claim to the jury and plaintiff never received a judgment under section 1981. We disagree.

The record clearly demonstrates that throughout this litigation plaintiff pursued both a common law retaliatory discharge claim *and* a section 1981 retaliation claim, and that defendants understood that to be the case. Indeed, defendants argued in their posttrial motion: "Plaintiff pursued two theories at trial to support her retaliation claim. Plaintiff claimed that Defendant violated 42 U.S.C. §1981 and also claimed that Defendant violated Illinois common law." According to defendants, "neither theory should have been presented to the jury." Defendants now maintain, however, that the single retaliation instruction given to the jury demonstrates that plaintiff's section 1981 claim was not submitted to the jury. See 376 Ill. App. 3d at 942. Assuming, *arguendo*, that the single retaliation instruction blurred the line between plaintiff's state and federal claims, as already discussed, a court's subject matter jurisdiction is not dependent upon the correctness of the jury instructions.

As to defendants' contention that plaintiff did not obtain a judgment under section 1981, that contention, even if true, is not determinative of whether the court had subject matter jurisdiction. See *Belleville Toyota*, 199 Ill. 2d at 340-41 ("subject matter jurisdiction does not depend upon the ultimate outcome of the suit"). Further, a review of the record demonstrates that plaintiff did obtain a judgment under section 1981.

The verdict form indicates that the jury answered affirmatively the following query: "Did Plaintiff Blount prove her claim against Defendant Jovon that her protected activity was a motivating factor

in defendants' termination of her employment?" The jury awarded damages, and the trial court entered judgment on the jury verdict on the amounts set forth in the verdict form. The trial court later awarded plaintiff her attorney fees. As plaintiff notes, the trial court could only make an award of attorney fees if plaintiff was a "prevailing party" in her section 1981 action. See 42 U.S.C. §1988(b) (2000) (allowing the "prevailing party" in a section 1981 action a reasonable attorney fee). In its order and memorandum opinion granting plaintiff's fee petition, the trial court expressly rejected the argument defendants raise here, stating: "Plaintiff did obtain a judgment under [section] 1981. The jury verdict was returned which awarded Plaintiff damages for her retaliation claims." We attach no particular significance to the fact that the final order entered on the jury verdict and the fee petition does not expressly refer to section 1981, instead referring generally to plaintiff's "claims of retaliation." Nothing in the record indicates that the trial court intended to retreat from its unequivocal earlier ruling that "[p]laintiff did obtain a judgment under [section] 1981."

We now turn to the substantive issue before us: Did the circuit court have subject matter jurisdiction over plaintiff's federal claim, or was plaintiff required to litigate her federal claim in the administrative forum provided by the Act?

Plaintiff argues that only those civil rights violations specifically enumerated in the Act are subject to the Act's administrative procedures, and that the federal civil rights violation she alleged is outside the Act. See 775 ILCS 5/1–103(D) (West 2000) (defining "civil rights violation"). Therefore, argues plaintiff, the court had subject matter jurisdiction over her section 1981 claim. Defendants respond that our appellate court, in cases spanning over two decades, has held that Illinois courts lack subject matter jurisdiction over civil rights claims brought under both state and federal law, and that such claims are subject to the administrative procedures set forth in the Act. See *Cahoon v. Alton Packaging Corp.*, 148 Ill. App. 3d 480, 483 (1986); *Faulkner-King v. Wicks*, 226 Ill. App. 3d 962, 970-71 (1992); *Cooper v. Illinois State University*, 331 Ill. App. 3d 1094, 1100 (2002); *Brewer v. Board of Trustees of the University of Illinois*, 339 Ill. App. 3d 1074, 1083 (2003); *Meehan v. Illinois Power Co.*, 347 Ill. App. 3d 761, 763-68 (2004).

-14-

In *Cahoon*, the plaintiff filed an action against his former employer for damages and reinstatement under the federal Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. §621 *et seq.* (1982)). Based on the language of section 8–111(C), and its earlier decision in *Mein v. Masonite Corp.*, 124 Ill. App. 3d 617 (1984), *aff'd*, 109 Ill. 2d 1 (1985), the appellate court held that an Illinois court must dismiss an ADEA case unless state administrative remedies have been exhausted. *Cahoon*, 148 Ill. App. 3d at 482. According to the appellate court, a federal civil rights claim is not entitled to "preferential treatment" and "must be prosecuted under the same procedure applicable to a State civil rights claim," *i.e.*, through the administrative procedures set forth in the Act. *Cahoon*, 148 Ill. App. 3d at 483.

In *Faulkner-King*, the plaintiff filed a complaint against the University of Illinois' board of trustees and various individuals alleging, *inter alia*, several gender-based claims under the federal constitution (U.S. Const., amend. XIV) and federal civil rights legislation (42 U.S.C. §§ 1983, 1985, 1986 (1988)). The circuit court concluded that, under section 8–111(C) of the Act, it lacked subject matter jurisdiction over plaintiff's federal claims. *Faulkner-King*, 226 Ill. App. 3d at 963-64. On appeal, the plaintiff argued that circuit courts have concurrent jurisdiction over a claim premised on a federal civil rights statute and that state courts are thus obligated to hear such claims. The appellate court disagreed, noting that the plaintiff's argument was similar to one rejected by the appellate court in *Cahoon*. *Faulkner-King*, 226 Ill. App. 3d at 971. The appellate court also concluded that the Act is the exclusive source of a remedy for an employment-discrimination claim. *Faulkner-King*, 226 Ill. App. 3d at 971. Although the appellate court provided no supporting citation, its conclusion was clearly based on its earlier discussion of *Mein*, where the appellate court stated, "the Illinois Supreme Court has spoken definitively on the issue concluding the Act was intended to be the exclusive remedy for handling claims of employment discrimination." *Faulkner-King*, 226 Ill. App. 3d at 967, citing *Mein*, 109 Ill. 2d at 7.

In the *Cooper* case, the plaintiff filed an action against his former employer, Illinois State University, and various individuals, alleging that defendants violated the ADEA and Title VII of the Civil Rights

Act of 1964 (42 U.C.S. §§ 2000e through 2000e–17 (1994)). The appellate court affirmed the circuit court's dismissal of the plaintiff's complaint. *Cooper*, 331 Ill. App. 3d at 1100. The appellate court stated that "Illinois courts have consistently held that by enacting section 8–111(C), the legislature specifically provided that trial courts do not have jurisdiction to hear independent actions for civil rights violations." *Cooper*, 331 Ill. App. 3d at 1098. The appellate court cited several cases in support, among them this court's decision in *Mein. Cooper*, 331 Ill. App. 3d at 1098. The appellate court adhered to *Faulkner-King* and *Cahoon* and held that "in Illinois, the Act is the exclusive source of a remedy for employment-discrimination claims." *Cooper*, 331 Ill. App. 3d at 1100.

In *Brewer*, the plaintiff filed an action against the University of Illinois and various individuals, alleging violations of Titles VI and VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000d through 2000d–4, 2000e through 2000e–17 (2000)), section 1983 (42 U.S. C. §1983 (2000)), the Americans with Disabilities Act of 1990 (42 U.S.C. §§12111 through 12117 (2000)), and the equal protection clause (U.S. Const., amend. XIV). Generally, the plaintiff claimed he was discriminated against based on his race and his learning disability. The plaintiff also alleged that the defendants retaliated against him because he had complained of their discrimination. The appellate court held that "Illinois courts have no jurisdiction over plaintiff's claims, regardless of whether he couches them in a state statute or federal statute, because they are 'inextricably linked' to alleged civil rights violations." *Brewer*, 339 Ill. App. 3d at 1083, citing *Maksimovic*, 177 Ill. 2d at 514. The appellate court also quoted favorably from the *Faulker-King* opinion: " 'Congress can utilize [s]tate courts to enforce [f]ederal rights, but it must do so subject to all conditions which the [s]tate court imposes on other litigants.' " *Brewer*, 339 Ill. App. 3d at 1083, quoting *Faulkner-King*, 226 Ill. App. 3d at 970.

In *Meehan*, the plaintiff filed a complaint alleging that Illinois Power Company violated the ADEA by discharging him because of his age. The appellate court reviewed *Cahoon* and *Faulkner-King* and determined that they were correctly decided. *Meehan*, 347 Ill. App. 3d at 765-68. Thus, the circuit court had no jurisdiction over plaintiff's federal claim. *Meehan*, 347 Ill. App. 3d at 768. The

appellate court stated that all cases of age discrimination, whether based on federal or state law, are barred from Illinois circuit courts. *Meehan*, 347 Ill. App. 3d at 767. "Thus, federal claims of age discrimination are treated identically to state claims of age discrimination." *Meehan*, 347 Ill. App. 3d at 767. Finally, the appellate court, citing to the *Mein* opinion, stated that the Act was intended to prevent direct access to the courts for redress of civil rights violations, and that permitting federal claims to be brought in state court would subvert this purpose. *Meehan*, 347 Ill. App. 3d at 768, citing *Mein*, 109 Ill. 2d at 7.

Plaintiff disagrees with the appellate court's expansive reading of section 8–111(C), arguing that *Cahoon* and its progeny have misconstrued and misapplied this court's holding in *Mein*.

In *Mein* the plaintiff filed a complaint against his former employer, alleging that he was wrongfully discharged on account of his age. We affirmed the dismissal of the plaintiff's complaint. *Mein*, 109 Ill. 2d at 7-8. We noted that the public policy on which plaintiff relied in bringing his civil suit is contained in the Act (see Ill. Rev. Stat. 1983, ch. 68, par. 1–102(A)), and that the Act contains comprehensive procedures to investigate and adjudicate alleged violations of this public policy. *Mein*, 109 Ill. 2d at 5. Considering the language and legislative history of the Act we concluded:

> "The legislature has specifically provided through section 8–111[ ] *** that courts have no jurisdiction to hear independent actions for civil rights violations. It is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations." *Mein*, 109 Ill. 2d at 7.

Notwithstanding the broad language in the *Mein* opinion, the precedential scope of our decision is limited to the facts that were before us. See *People v. Palmer*, 104 Ill. 2d 340, 345-46 (1984). *Mein* did not involve a civil rights claim under federal law. Thus, we agree with plaintiff that, to the extent *Cahoon* and subsequent cases have relied on *Mein* to hold that Illinois circuit courts have no subject matter jurisdiction over civil rights claims brought under federal law, their reliance is misplaced.

Defendants counter that the legislature, through its silence, has acquiesced in the appellate court's interpretation of the Act's jurisdiction provision. Defendants note that although the legislature amended the Act in 2007 to provide complainants, in certain circumstances, the option of pursuing their civil rights claims in the circuit court, the legislature made no provision for state court jurisdiction over federal claims. See Pub. Act 95–243, eff. January 1, 2008 (amending, *inter alia*, sections 7A–102 and 8–111).

"Where the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent." *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). "This presumption, however, is merely a jurisprudential principle; it is not a rule of law." *People v. Perry*, 224 Ill. 2d 312, 331 (2007). Thus, although the legislature's failure to amend a statute after a judicial interpretation is suggestive of legislative agreement, it is not conclusive. *People v. Foster*, 99 Ill. 2d 48, 55 (1983). Further, where the meaning of the statute is unambiguous, we will give little weight to the fact that the legislature did not amend the statute after appellate opinions interpreting the same. *Perry*, 224 Ill. 2d at 331-32; see also 2B N. Singer, Sutherland on Statutory Construction §49.04 (6th rev. ed. 2000) ("contemporaneous or practical interpretation will not be permitted to control the meaning of the plain and unambiguous terms of a statute"). We conclude that such is the case here. The appellate court's holding in *Cahoon* and its progeny is contrary to the clear language of the Act, and the presumption of legislative acquiescence does not apply.

*Cahoon* held that the plaintiff's federal civil rights claim under the ADEA "must be prosecuted under the same procedure applicable to a State civil rights claim," *i.e.*, through the administrative procedures set forth in the Act. *Cahoon*, 148 Ill. App. 3d at 483. Implicit in this holding, and similar holdings in other appellate court opinions, is that the Act authorizes the Department of Human Rights and the Human Rights Commission to administer, or at least resolve claims filed under, the ADEA or other relevant federal acts, here the Civil Rights Act of 1866 (42 U.S.C. §1981). Nothing in the language of the Act, however, authorizes the Department or Commission to do so.

-18-

The term "civil rights violation," as used in the Act, has a particular and limited meaning:

> " 'Civil rights violation' includes and *shall be limited to* only those specific acts set forth in Sections 2–102, 2–103, 2–105, 3–102, 3–103, 3–104, 3–104.1, 3–105, 4–102, 4–103, 5–102, 5A–102 and 6–101 of this Act." (Emphasis added.) 775 ILCS 5/1–103(D) (West 2000).[3]

This definition makes plain that a "civil rights violation," for purposes of the Act, is limited to civil rights violations arising under the enumerated sections of the Act, and does not include a civil rights violation as defined by, or arising under, federal law. Accordingly, the administrative procedures contained in the Act, which govern the filing and disposition of alleged "civil rights violations," are applicable only to civil rights violations under the Act.

Even if the facts giving rise to a civil rights violation, as defined by the Act, could also give rise to a civil right violation as defined by federal law, the administrative procedures in place and the authority of the Department and Commission apply only to the former violation, not the latter violation. In short, the Department and Commission administer the Act–not federal law–and their authority can extend no further. Any claim of a civil rights violation brought before the Department or Commission must be examined through the

---

[3]The sections of the Act referenced in the definition of "civil rights violation" cover discrimination in employment (section 2–102); discrimination in employment based on arrest record (section 2–103); public contractors (section 2–105); discrimination in real estate transactions (section 3–102); blockbusting (section 3–103); refusal to sell or rent because a person has a guide, hearing or support dog (section 3–104.1); restrictive covenants based on race, color, religion, or national origin (section 3–105); discriminatory loan practices (section 4–102); discriminatory credit card offers (section 4–103); discrimination in public accommodations (section 5–102); civil rights violations in higher education (section 5A–102); and additional civil rights violations, including retaliation (section 6–101). Though section 3–104 is also included in the statutory definition, the legislature repealed that section. See Pub. Act 86–910, §2, eff. September 11, 1989.

lens of our state law. Thus, a party, like plaintiff here, who wishes to pursue her rights and remedies under federal law may not do so before the Department or Commission, as these administrative entities have no statutory authority to entertain federal claims. See *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 186 (2003) (administrative agency possesses only those powers granted by the legislature; any action must be authorized by the statute under which the agency was created); *Villegas v. Board of Fire & Police Commissioners*, 167 Ill. 2d 108, 126 (1995) ("an administrative body lacks inherent or common law authority to exercise jurisdiction not conferred upon it by legislative enactment"); *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 129 (1976) ("administrative bodies have only such powers as are conferred upon them by statute or ordinance").

Though our conclusion concerning the limits of the Department's and Commission's authority rests on the language of the Act, we note that it is also consistent with Supreme Court precedent recognizing the divergence in the objectives of state administrative procedures for resolving employment discrimination suits and a federal cause of action to vindicate rights under the Reconstruction-Era Civil Rights Acts (42 U.S.C. §1981 *et seq.*). "The goals of the federal statutes are compensation of persons whose civil rights have been violated, and prevention of the abuse of state power." *Burnett v. Grattan*, 468 U.S. 42, 53, 82 L. Ed. 2d 36, 47, 104 S. Ct. 2924, 2931 (1984). In contrast, the goals of the state administrative procedure "is the prompt identification and resolution of employment disputes. The administrative scheme, including a short statute of limitations, encourages conciliation and private settlement through the agency's intervention in live disputes." *Burnett*, 468 U.S. at 54, 82 L. Ed. 2d at 47, 104 S. Ct. at 2932. Although the Court's observations were made with reference to a Maryland discrimination statute, they could just as easily refer to the Illinois Act.

Having concluded that plaintiff here could not pursue her section 1981 claim in the Act's administrative forum, the question remains: Could plaintiff pursue her section 1981 claim in the circuit court? We answer this question in the affirmative.

Circuit courts are courts of general jurisdiction (*Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 524 n.3 (2001), citing Ill. Const. 1970,

art. VI, §9), and are presumptively competent to adjudicate claims arising under the laws of the United States (*Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823, 108 L. Ed. 2d 834, 839, 110 S. Ct. 1566, 1568 (1990). While states "have great latitude to establish the structure and jurisdiction of their own courts" (*Howlett v. Rose*, 496 U.S. 356, 372, 110 L. Ed. 2d 332, 351, 110 S. Ct. 2430, 2441 (1990)), section 8–111 of the Act does not demonstrate an intent by the legislature to divest the circuit courts of jurisdiction over claims filed pursuant to section 1981.

Section 8–111, titled "Court Proceedings," first identifies two instances requiring judicial involvement. Under subsection (A), a complainant or respondent may petition for "judicial review," in the appellate court, of any final order entered under the Act. 775 ILCS 5/8–111(A)(1) (West 2000). Under subsection (B), the Department or an aggrieved party may seek "judicial enforcement" of a Commission order through the filing of a complaint in the circuit court. 775 ILCS 5/8–111(B) (West 2000). Subsection (C) then sets forth a "Limitation" on a state court's jurisdiction:

> "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8–111(C) (West 2000).

As already discussed, the term "civil rights violation," as used in the Act, has a particular meaning. " 'Civil rights violation' includes and shall be limited to only those acts sets forth" in certain enumerated sections of the Act. 775 ILCS 5/1–103(D) (West 2000). "[U]nless the context requires otherwise," this statutory definition controls. 775 ILCS 5/1–103 (West 2000). Nothing in section 8–111, or article 8 as a whole, indicates that the context requires a departure from the statutory definition. Thus, the limitation on the jurisdiction of state courts "over the subject of an alleged civil rights violation" is itself limited by the statutory definition of "civil rights violation." In other words, the limitation on the court's jurisdiction applies only to civil rights violations defined by and arising under the Act. The jurisdictional limitation does not apply to civil rights violations defined by and arising under federal law, as those violations are outside the scope of the Act.

Because the holding in *Cahoon* and subsequent cases is contrary to the clear language of section 8–111, we do not deem the legislature's purported silence following these decisions as acquiescence in the appellate court's construction of the Act. See *Perry*, 224 Ill. 2d at 331-32. Accordingly, section 8–111 did not prohibit the circuit court from exercising jurisdiction over plaintiff's section 1981 claim. Plaintiff could properly pursue her rights and remedies under federal law in the circuit court.

In light of our holding, we need not address plaintiff's argument that subjecting her section 1981 claim to the Act's administrative procedures would impermissibly burden a federal right. See *Felder v. Casey*, 487 U.S. 131, 101 L. Ed. 2d 123, 108 S. Ct. 2302 (1988) (where the Court held that Wisconsin's notice-of-claim statute, which required notice to governmental agencies before suit could be brought against them, did not apply to the plaintiff's section 1983 action against a municipality and certain of its police officers, because the statute stood as an obstacle to the purpose and effect of section 1983 and was thus preempted). Similarly, we need not consider defendants' counterargument that plaintiff forfeited review of this issue for failure to provide notice to the Attorney General (see 210 Ill. 2d R. 19), or that the Act's administrative procedures are neutral rules that are not preempted by section 1981 (see *Johnson v. Fankell*, 520 U.S. 911, 138 L. Ed. 2d 108, 117 S. Ct. 1800 (1997) (where the Court distinguished *Felder* and held that an Idaho appellate rule limiting interlocutory appeals applies to the denial of qualified immunity in a section 1983 claim brought in state court)).

CONCLUSION

For the reasons stated, we reverse the judgment of the appellate court reversing the trial court's denial of defendants' motion for judgment notwithstanding the verdict. Because the appellate court disposed of the appeal solely on the basis of the trial court's jurisdiction, it never considered defendants' other claims of error. See 376 Ill. App. 3d at 936-37. Accordingly, we remand this matter to the appellate court to consider those claims.

*Reversed and remanded.*