No. 2-09-1078     Filed: 12-30-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RICHARD A. DUNCAN | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01--L--374 |
| | ) | |
| BERVIN PETERSON AND THE MOODY | ) | |
| CHURCH, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Hope Church, Plaintiff; Erwin Lutzer, | ) | David M. Hall, |
| Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Erwin Lutzer, appeals the trial court's judgment entered on a jury verdict in favor of plaintiff, Richard Duncan, on plaintiff's complaint alleging claims of false light invasion of privacy and conspiracy. Defendant contends that the trial court erred when it failed to grant his motion for judgment notwithstanding the verdict. In the alternative, defendant contends that the trial court erred when it failed to grant a new trial. We affirm.

This matter was initiated when plaintiff and Hope Church filed a complaint against plaintiff's former church and its senior clergy after the senior pastor at the former church sent a bundle of letters to board members of Hope Church. The bundle of letters contained language accusing plaintiff of having an extramarital affair, filing a divorce petition against his wife, misusing church funds, and

abusing alcohol. The bundle of letters also contained language purporting to strip plaintiff of his ordination as a minister and requesting that he no longer function in a ministerial capacity. The trial court initially determined that the ecclesiastical abstention doctrine applied and thus found that it lacked subject matter jurisdiction to hear plaintiffs' claims. It granted defendants' motion for summary judgment. This court reversed, holding that the ecclesiastical abstention doctrine did not apply. See Duncan v. Peterson, 359 Ill. App. 3d 1034 (2005). On remand, the jury found defendant, the senior pastor of the former church, liable and awarded plaintiff $276,306 in damages. Defendant appealed.

The evidence adduced at trial established the following. In 1989, plaintiff was ordained as a minister by the Moody Church. For the next several years, plaintiff worked in that capacity under defendant. In 1992, plaintiff resigned his position with the Moody Church in order to become the senior pastor for the Village Church of Lincolnshire. Subsequently, with the help of some fellow churchgoers, including Robert Dickman, Alvin Puccinelli, and Albert Nader, plaintiff founded Hope Church. Dickman, Puccinelli, and Nader became board members of Hope Church. In 2000, plaintiff's marriage experienced difficulties, and in March 2000 plaintiff's wife filed for divorce. Plaintiff sought and received an order of protection against his wife after she gave Puccinelli documents that she claimed were e-mails between plaintiff and another woman. Puccinelli gave the documents to Nader. During the divorce proceedings, Nader testified on behalf of plaintiff's wife, and plaintiff's wife accused plaintiff of abusing alcohol.

In late March 2000, Nader called defendant and informed him that plaintiff's marriage was in trouble. Subsequently, Dickman and Nader met with defendant and the board of elders of the Moody Church to discuss plaintiff's marriage. In April 2000 plaintiff received a letter dated April 23, 2000, and signed by "The Elders of Moody Church," including defendant. The letter provided in part:

"1. You have had an improper relationship with a divorced single woman, violating the Biblical teaching that an elder be 'above reproach.'

2. Your decision to file a divorce petition against your wife violates the Biblical admonition that husbands are to love their wives 'as Christ loved the church[.]'

3. Your misuse of alcohol violates the Biblical admonition that an elder be 'temperate, self-controlled.' ***

4. Your misuse of personal funds as well as the deceitful means used to obtain the Hope Church Bank account violates the Biblical admonition that an elder should not be a 'lover of money.' ***

* * *

We want to give you an opportunity to reply to these charges. If you contact any one of us before Thursday, May 4, 2000, we will be glad to set up a meeting with you to which we will invite the former members of your church Board, and if necessary, other witnesses. ***

If you do not reply to us by the May 4 date, we will have no choice but to rescind your ordination to the Christian ministry that we granted you."

In response to the letter, plaintiff contacted John Welch, a signatory of the letter. Plaintiff denied the allegations and inquired as to why the Moody Church was getting involved in his personal affairs.

On May 5, 2000, plaintiff received a second letter from the Moody Church, requesting that plaintiff appear in person in front of its executive committee. The letter stated in part:

"[Given] the seriousness of this matter, we have chosen this Monday evening, May 8, to make a final decision regarding your credentials for ministry that we conferred upon you. If you

are unwilling to appear, with deep regret we will have to rescind your ordination and licensing."

Plaintiff did not attend the May 8, 2000, meeting of the Moody Church executive committee.

Plaintiff subsequently received a third letter from the Moody Church, dated May 9, 2000, and signed by defendant and another Moody Church elder, Bervin Peterson. The letter stated:

"This letter is to inform you that last night, May 8, 2000, the Executive Committee of the Moody Church, upon the recommendation of the Elders, voted to rescind the licensing and ordination that this body conferred to you in March, 1989.

\*\*\*

Effective immediately, in light of our decision to revoke your licensing and ordination, we now request the following:

1. That you no longer function in the role of minister.

2. That you no longer accept the title 'Reverend' Duncan, or 'Pastor' Duncan, or any other such title that would imply that you have credentials for spiritual leadership and ministry.

3. That you inform the leadership and membership of Hope Church of our action."

Before plaintiff received his own copy of the May 9, 2000, letter, his children's guardian ad litem showed him a copy of the letter at a dissolution proceeding. This copy included a cover letter, signed by defendant. The cover letter was addressed to Puccinelli, Dickman, and Nader and noted three enclosures: the April 23, 2000, letter; the May 5, 2000, letter; and the May 9, 2000, letter. The cover letter stated, "We are sending you this information and it is up to you as to what is done with it."

On May 8, 2001, plaintiff and Hope Church filed their complaint against defendant, Peterson, and the Moody Church, based upon the letters. The trial court granted summary judgment in favor of defendants. Plaintiff and Hope Church appealed, and this court remanded the case after determining that genuine issues of material fact existed to preclude summary judgment on plaintiff's false-light-invasion-of-privacy and conspiracy claims. See Duncan, 359 Ill. App. 3d 1034. This court affirmed the judgment against Hope Church, because no injury was alleged against it. On remand, the trial court entertained defendant's motion to bar the testimony of a woman who alleged that defendant had touched her inappropriately, but it ultimately denied defendant's motion. The case proceeded to a jury trial. A verdict was subsequently entered against defendant and in favor of plaintiff in the amount of $276,306. Peterson and the Moody Church were found not liable. Defendant timely appealed. Hope Church, Peterson, and the Moody Church are not parties to this appeal.

Defendant's initial contention is that the trial court erred when it failed to grant defendant's motion for judgment notwithstanding the verdict. We review de novo a trial court's decision to deny a motion for judgment notwithstanding the verdict. Thornton v. Garcini, 382 Ill. App. 3d 813, 817 (2008), citing McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 132 (1999). The trial court may enter judgment notwithstanding the verdict only when, viewing the evidence in the light most favorable to the nonmoving party, it so overwhelmingly favors the movant that a contrary verdict could not stand. Williams v. City of Chicago, 371 Ill. App. 3d 105, 106 (2007).

In support of his contention, defendant argues that (1) the undisputed facts established that the trial court did not have subject matter jurisdiction to decide the false-light-invasion-of-privacy claim; (2) the undisputed facts established that the false-light-invasion-of-privacy claim is defeated

by the religion and speech clauses of the first amendment as read into the fourteenth amendment to the United States Constitution; (3) the undisputed facts established that the false-light-invasion-of-privacy claim is defeated by conditional privilege; and (4) plaintiff's failure to prove the necessary elements of his false-light-invasion-of-privacy claim precluded a judgment in his favor. We review each of defendant's arguments in turn.

Defendant argues that the trial court erred when it denied his motion for judgment notwithstanding the verdict, because the undisputed facts at trial established that the trial court did not have subject matter jurisdiction to decide the false-light-invasion-of-privacy claim. Specifically, defendant asserts that the ecclesiastical abstention doctrine precludes the judiciary from involving itself in matters within the church, including the Moody Church's decision to revoke plaintiff's ordination and its conduct of disseminating the letters regarding the revocation of plaintiff's ordination. The ecclesiastical abstention doctrine provides that civil courts may not determine the correctness of interpretations of canonical text or some decisions relating to government of the religious polity; rather, courts must accept as given whatever the religious entity decides. Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709, 49 L. Ed. 2d 151, 163, 96 S. Ct. 2372, 2380 (1976). We review de novo whether the trial court had subject matter jurisdiction. Blount v. Stroud, 232 Ill. 2d 302, 308 (2009). We determine that the ecclesiastical abstention doctrine did not apply and that thus the trial court had subject matter jurisdiction.

The issue of whether the doctrine of ecclesiastical abstention deprived the trial court of subject matter jurisdiction was discussed by this court in its previous opinion. See Duncan, 359 Ill. App. 3d 1034. When we reversed the trial court's order granting summary judgment, we held:

"We determine that we do not need to inquire into or interpret religious matters to decide whether the May 9, 2000, letter *** was a tortious invasion of privacy. We are not required to look at religious doctrine or biblical underpinnings of the Moody Church's right to revoke an ordination to determine whether defendants' conduct invaded [plaintiff's] privacy by publishing false information. *** The harm alleged in the complaint resulted from the alleged conduct of defendants in placing [plaintiff] in a false light when revoking that ordination. *** [W]e may review defendants' conduct in carrying out the revocation." Duncan, 359 Ill. App. 3d at 1046.

Defendant asserts that the ecclesiastical abstention doctrine was "not raised or addressed with respect to the publication of the ordination revocation in the first appeal." Defendant misconstrues our previous opinion. We determined that publication of the letter's contents and the tortious effects the publication had upon plaintiff were not beyond the reach of the trial court. Specifically, we stated, "Deciding whether defendants published a letter placing [plaintiff] in a false light, by appearing to revoke [plaintiff's] ability to be a minister and pastor at Hope Church, does not require extensive inquiry into religious law and polity." Duncan, 359 Ill. App. 3d at 1046.

Defendant further asserts that our opinion in Bruss v. Przybylo, 385 Ill. App. 3d 399 (2008), directly conflicts with our holding in Duncan regarding whether the ecclesiastical abstention doctrine precluded subject matter jurisdiction. We disagree. In Bruss, this court was asked to resolve whether the ecclesiastical abstention doctrine precluded a trial court from compelling the suspension and termination of a priest from a particular church and determining if the results of a church election should be invalidated. We answered the question in the affirmative, holding that "the more circumspect approach is to rest the abstention decision entirely on the subject matter of the dispute."

Bruss, 385 Ill. App. 3d at 421. In that case, although the plaintiffs framed their claim as one based in property rights, the thrust of the dispute's subject matter concerned the fitness of the priest and the qualifications of certain voting members within the congregation; property rights were involved only incidentally. Bruss, 385 Ill. App. 3d at 415. The same cannot be said of the subject matter in the case before us. In the present matter, the subject matter of the dispute is whether defendant invaded plaintiff's privacy by placing him in a false light when defendant disseminated to individuals who were not members of the Moody Church a bundle of letters regarding plaintiff's conduct. Because the subject matter of this dispute is grounded in false light invasion of privacy, Duncan does not conflict with our opinion in Bruss.

Moreover, although defendant cites six opinions from foreign jurisdictions in support of his argument that the ecclesiastical abstention doctrine precluded the trial court's subject matter jurisdiction, we determine that each is distinguishable. In Ad Hoc Committee of Parishioners of Our Lady of the Sun Catholic Church, Inc. v. Reiss, 223 Ariz. 505, 224 P.3d 1002 (App. 2010), the Arizona Court of Appeals determined that the ecclesiastical abstention doctrine applied to claims regarding a priest's fitness to be elected as director and president of a congregational church. Unlike the case currently before us, in Reiss, the court was asked to interpret the job rights and qualifications of clergy within a church. In declining to do so, the court determined that a " ' minister's employment relationship with his church implicates internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law.' " Reiss, 223 Ariz. at 517, 224 P.3d at 1014, quoting Hutchison v. Thomas, 789 F.2d 392, 396 (6th Cir. 1986). Again, in the current matter, the subject matter of the dispute is whether defendant invaded plaintiff's privacy by placing him in a false light when defendant disseminated a bundle of letters to individuals who were not members of the

Moody Church. Because, here, the letters were not transmitted only within the Moody Church, the subject matter of the dispute does not concern matters internal to the Moody Church.

In Rentz v. Werner, 156 Wash. App. 423, 232 P.3d 1169 (2010), the Washington Court of Appeals determined that the ecclesiastical abstention doctrine applied to claims regarding whether a minister at a church had exceeded her authority when she expelled several members. Again, Rentz is distinguishable from the present matter because the subject matter of the dispute in Rentz concerned internal matters of church governance, while the subject matter here concerns the dissemination of information about plaintiff to members outside of the Moody Church.

In Ogle v. Church of God, 153 Fed. Appx. 371 (6th Cir. 2005), the United States Court of Appeals for the Sixth Circuit determined that the ecclesiastical abstention doctrine precluded its subject matter jurisdiction to decide whether a church had invaded the privacy of and defamed a bishop whom it accused of sexual impropriety. The appeals court determined that, although the complaint founded its claims in defamation, the subject matter of the dispute was the church's internal disciplinary procedures. The Ogle case is distinguishable from the present matter because, in Ogle, none of alleged defamatory information was disseminated beyond the church that made the allegations, and, thus, the subject matter concerned church governance.

In Higgins v. Maher, 210 Cal. App. 3d 1168, 258 Cal. Rptr. 757 (1989), a California appeals court held that the ecclesiastical abstention doctrine precluded it from determining whether a priest suffered defamation and invasion of privacy when, without his permission, a church disseminated to other dioceses within its organization information regarding certain medical treatment and diagnoses he received. However, unlike in the present matter, in Higgins, the information was disseminated only to other dioceses within the same church organization. Thus, the dissemination of the

information was categorized as an internal church procedure. Again, this is not the case in the present matter, as the Moody Church has no authority over Hope Church and, hence, the dissemination of the letters at issue was not an internal procedure of the Moody Church.

Defendant cites Alford v. United States, 116 F. 3d 334 (8th Cir. 1997), for the proposition that a church has the right to control its clergy, similar to a state bar association's right to control its lawyers and to publish its disciplinary determinations. Although this may be true, it does not bear directly on the issue presently before this court, whether defendant's dissemination of the letters to individual members of Hope Church constituted false light invasion of privacy. Furthermore, while a bar association does publish a decision to remove a name from its roll of attorneys, it does not publish a list of all allegations, let alone publish allegations without any inquiry.

Defendant cites Kinder v. Webb, 239 Ark. 1101, 396 S.W.2d 823 (1965), for the proposition that "[i]t is firmly settled that the civil courts will not assume jurisdiction of a dispute involving church doctrine or discipline unless property rights are involved." Kinder, 239 Ark. at 1102, 396 S.W.2d at 824. While we acknowledge that the present matter does not involve property rights and are mindful of Kinder's persuasive authority, we instead follow the approach we proclaimed in Bruss, 385 Ill. App. 3d 399, and again determine that the ecclesiastical abstention doctrine is not applicable in the present matter because the general subject matter of the dispute does not involve internal church matters. Accordingly, we conclude that the trial court had subject matter jurisdiction to hear plaintiff's claim.

Defendant next argues that the undisputed facts established that the false-light-invasion-of-privacy claim is defeated by the religion and speech clauses of the first amendment as read into the fourteenth amendment to the United States Constitution. Specifically, defendant asserts that the May

9, 2000, letter serving as the basis for the claim constituted religious opinions and, thus, is protected speech under the first amendment to the United States Constitution. Put another way, defendant asserts that, because the contents of the letter are religious opinions and cannot be proved false, no false-light-invasion-of-privacy claim can be sustained, no matter how derogatory the contents of the letters might be.

We review <u>de novo</u> whether a statement qualifies as constitutionally protected speech under the first amendment. <u>Schivarelli v. CBS, Inc.</u>, 333 Ill. App. 3d 755, 760 (2002), citing <u>Dubinsky v. United Airlines Master Executive Council</u>, 303 Ill. App. 3d 317, 324 (1999). Where a published statement alleged to be a fact is actually an opinion, it is protected by the first amendment. <u>Owen v. Carr</u>, 113 Ill. 2d 273, 280 (1986). To determine if an allegedly defamatory statement is constitutionally protected under the first amendment, or if it can be reasonably interpreted as a statement of actual fact, the emphasis is on whether the statement contains an objectively verifiable assertion. <u>Schivarelli</u>, 333 Ill. App. 3d at 760.

In the present matter, the disseminated May 9, 2000, letter included the April 23, 2000, letter as an enclosure. The April 23, 2000, letter stated all accusations contained within it as fact, not as opinion. The letter stated, "You have had an improper relationship with a divorced single woman," "Your decision to file a divorce petition against your wife," "Your misuse of alcohol," and "Your misuse of personal funds." Moreover, some of these factual allegations were falsehoods, such as that plaintiff filed a divorce petition against his wife, and the other allegations were stated without any investigation, such as that plaintiff misused alcohol and personal funds. As the April 23, 2000, letter was enclosed with the May 9, 2000, letter, it was part of the publication serving as the basis for the false-light-invasion-of-privacy claim. Because the April 23, 2000, enclosure contained false assertions

of fact, this argument fails. See Duncan, 359 Ill. App. 3d at 1037-38 (May 9, 2000, letter included April 23, 2000, letter and May 5, 2000, letter as enclosures).

Defendant next argues that the undisputed facts established that the false-light-invasion-of-privacy claim is defeated by conditional privilege. Specifically, defendant asserts that, because he sent the letters to only the three men who brought the charges against plaintiff, each of whom had an interest in the matter, and because at that time the letters contained no knowingly false statements, conditional privilege defeats plaintiff's claim. We disagree.

Whether plaintiff's false-light-invasion-of-privacy claim is defeated by conditional privilege is a legal question; therefore, our review is de novo. Blount, 232 Ill. 2d at 308. Defendant cites Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 585 (2006), in support of his position. Solaia Technology specifically regards the fair report privilege and provides, " '[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.' " Solaia Technology, 221 Ill. 2d at 585, quoting Restatement (Second) of Torts §611 (1977). There are two requirements to establish the privilege: (1) the report must be of an official proceeding; and (2) the report must be complete and accurate or a fair abridgement of the official proceeding. Solaia Technology, 221 Ill. 2d at 588.

In the current matter, the statements contained in the letters are not a summary of an official proceeding or a summary of a meeting that was open to the public. The fair report privilege was designed to protect reporting of government proceedings. Solaia Technology, 221 Ill. 2d at 587. We determine that it does not extend to the statements here, because they are not a report or summary of an official proceeding, but are instead a series of accusations and requests by leaders of

a church . See Eubanks v. Northwest Herald Newspapers, 397 Ill. App. 3d 746, 749 (2010); see also Solaia Technology, 221 Ill. 2d at 588.

Moreover, as plaintiff points out, even if a conditional privilege did exist, it is immaterial because it cannot survive the jury's findings at trial. According to Kuwik v. Starmark Star Marketing & Administration, Inc., 156 Ill. 2d 16, 24 (1993), which both parties cite, once a defendant establishes a conditional privilege, a plaintiff can overcome this privilege if he or she proves that the defendant either intentionally published the material while knowing the matter was false or displayed a reckless disregard as to the matter's falseness. Kuwik, 156 Ill. 2d at 24. To overcome a conditional privilege, the plaintiff must show either a "direct intention to injure" or a "reckless disregard" of the plaintiff's rights. Kuwik, 156 Ill. 2d at 30. "[A]n abuse of a [conditional] privilege may consist of any reckless act which shows a disregard for the defamed party's rights." Kuwik, 156 Ill. 2d at 30. Here, the jury found that, when the letters were sent, defendant knew that they contained false statements or he acted in reckless disregard for whether any statements were false. Thus, defendant's claim of conditional privilege was overcome by the jury's findings at trial.

Defendant next argues that plaintiff's failure to prove the elements of a false-light-invasion-of-privacy claim precluded a judgment in his favor. Specifically, defendant asserts that (1) there was no evidence of a false statement in the May 9, 2000, letter; (2) there was no evidence of actual malice; and (3) the evidence adduced at trial did not support that plaintiff was placed in a false light before the public.

As noted, a judgment notwithstanding the verdict should be entered only when the evidence so overwhelmingly favors the movant that no contrary verdict is possible. Williams, 371 Ill. App. 3d at 106. To recover for a claim of false-light-invasion-of-privacy, a plaintiff must prove that the defendant's actions placed the plaintiff in a false light before the public, that the false light would be

highly offensive to a reasonable person, and that the defendant acted with actual malice. Schivarelli, 333 Ill. App. 3d at 764.

Defendant first asserts that the evidence adduced at trial did not establish that the May 9, 2000, letter contained a false statement. There can be no claim for false-light-invasion-of-privacy without a false statement being made by the defendant; it is the essence of the claim. See Kirchner v. Greene, 294 Ill. App. 3d 672, 683 (1998). Here, the May 9, 2000, letter stated that plaintiff's ordination from the Moody Church was revoked. It then requested that plaintiff no longer function as a minister, that he no longer accept the title of "Reverend" or "Pastor," and that he inform Hope Church of the Moody Church's action. However, defendant testified at trial that he sent the May 9, 2000, letter to Puccinelli, Dickman, and Nader with both the April 23, 2000, letter and the May 5, 2000, letter attached. The contents of those letters contained falsehoods, such as that plaintiff filed a divorce petition against his wife. Because the letters were disseminated together as one package, it is immaterial whether the May 9, 2000, letter, by itself, contained false statements. See Duncan, 359 Ill. App. 3d at 1037-38. Thus, we determine that the jury could have found that defendant published false statements.

Defendant next asserts that there was no evidence of actual malice. For a finding of malice, the jury needed to find that the statements were made with knowledge that they were false or with reckless disregard for whether they were true or false. See Lovgren v. Citizens First National Bank of Princeton, 126 Ill. 2d 411, 419-23 (1989). Here, defendant testified that he did not investigate the charges in the letters; he did not check the public record regarding the circumstances surrounding plaintiff's dissolution proceedings; and he did not question those who accused plaintiff of the behaviors stated in the letters. Furthermore, defendant testified that subsequent to the letters' dissemination, plaintiff requested that defendant clarify that the Moody Church had no power to

prevent plaintiff from acting as pastor of Hope Church; defendant refused plaintiff's request. Thus, we determine that the jury could have found that defendant acted with actual malice. See Lovgren, 126 Ill. 2d at 419-23.

Next, defendant asserts that the evidence did not support that plaintiff was placed in a false light before the public. To establish a false light invasion of privacy, a plaintiff must prove that he was injured when he was placed in a false light before the public. Kolegas v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 17 (1992). While the publicity element will ordinarily be shown by a general publication, this court has recognized that limited publication to recipients who are in a special relationship with the plaintiff satisfies the publicity element. See Duncan, 359 Ill. App. 3d at 1049. Thus, because of Puccinelli's, Dickman's, and Nader's positions in Hope Church, dissemination of the letters to them was as harmful to plaintiff as dissemination to the public would have been. See Duncan, 359 Ill. App. 3d at 1049.

Defendant asserts that the May 9, 2000, letter was not a proximate cause of plaintiff's injury. We determine that the jury could have found that the May 9, 2000, letter and its enclosures caused plaintiff's injury. The implication that plaintiff had an extramarital affair, filed for divorce from his spouse, abused alcohol, and misused personal funds would be offensive to a reasonable person. See Schivarelli, 333 Ill. App. 3d at 764 ("To state a claim for a false light invasion of privacy, the plaintiff must [prove] *** that the false light would be highly offensive to the reasonable person"). The evidence supported that, as a result of defendant disseminating the bundle of letters, Hope Church's membership diminished and the church could no longer continue to employ plaintiff. Plaintiff testified that he was unable to get work as a minister in any other church. The evidence supported the finding that plaintiff suffered injury as a result of the letters' dissemination.

After reviewing each of defendant's arguments, we conclude that, when viewed in the light most favorable to plaintiff, the evidence adduced at trial does not overwhelmingly favor defendant. Williams, 371 Ill. App. 3d at 106. The evidence was sufficient for a jury to have ruled in plaintiff's favor. Thus, we determine that the trial court did not err when it denied defendant's motion for judgment notwithstanding the verdict. Thornton, 382 Ill. App. 3d at 817, citing McClure, 188 Ill. 2d at 132.

Defendant's next contention is that the trial court erred when it failed to grant defendant a new trial. Specifically, defendant argues that (1) the verdict was against the manifest weight of the evidence; (2) the admission of evidence of publication by people other than defendant was improper; (3) the admission of the testimony of a women who alleged that defendant inappropriately touched her was an abuse of the trial court's discretion; and (4) the trial court erred when it restricted voir dire related to religious matters. We address each argument in turn.

Defendant first argues that the verdict was against the manifest weight of the evidence. Manifest weight is defined as that weight which is clearly evident, plain, and indisputable. Anderson v. Beers, 74 Ill. App. 3d 619, 623 (1979). A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, or not based on the evidence. Anderson, 74 Ill. App. 3d at 623. As we discussed above, the evidence adduced at trial was sufficient for a jury to have ruled in plaintiff's favor. Accordingly, we determine that the verdict was not against the manifest weight of the evidence.

Defendant next argues that the admission of evidence of publication by people other than defendant was improper. Specifically, defendant asserts that plaintiff was not entitled to recover damages based upon publication of the letters by those other than defendant. We disagree. Here, defendant's cover letter stated, "We are sending you this information and it is up to you as to what

is done with it."   Defendant's publication began the spread of false information throughout the community, ultimately causing plaintiff's injury.   As we stated in <u>Duncan</u>, "publicity to these three men, who within a short period of time had been leaders in the Hope Church, would have been just as devastating as publication to the general public because of their close ties to the congregation." <u>Duncan</u>, 359 Ill. App. 3d at 1049.

Defendant next argues that the admission of the testimony of a woman who alleged that defendant inappropriately touched her constituted an abuse of the trial court's discretion.   We will not overturn an evidentiary ruling of the trial court, absent an abuse of discretion.   <u>Gunn v. Sobucki</u>, 216 Ill. 2d 602, 608-09 (2005).   Defendant asserts that the evidence was irrelevant and prejudicial.   We disagree.   At trial, plaintiff testified that his knowledge of defendant's alleged inappropriate conduct with the woman was a source of contention between him and defendant.   Therefore, the evidence was relevant to show motive as to why defendant might have wished to harm plaintiff's reputation.   See <u>Thompson v. Petit</u>, 294 Ill. App. 3d 1029, 1035 (1998) (In a civil trial, evidence of prior acts of misconduct are relevant to show motive).   Because it was reasonable that plaintiff's knowledge of defendant's alleged conduct with the woman could have affected how defendant viewed plaintiff, it was within the trial court's discretion to allow the testimony.   See <u>Thompson</u>, 294 Ill. App. 3d at 1035.

Defendant next argues that the trial court erred when it restricted <u>voir dire</u> related to religious matters.   The purpose of <u>voir dire</u> during jury selection is to impanel an impartial jury.   <u>Limer v. Casassa</u>, 273 Ill. App. 3d 300, 302 (1995).   The trial court has the primary responsibility for initiating and conducting <u>voir dire</u>, and the scope and extent of <u>voir dire</u> are within its sound discretion.   <u>Rub v. Consolidated Rail Corp.</u>, 331 Ill. App. 3d 692, 696 (2002), citing <u>Dixson v. University of Chicago Hospitals & Clinics</u>, 190 Ill. App. 3d 369, 376 (1989).   Upon review, an abuse of discretion will be

found only if the trial court's conduct prevented the selection of an impartial jury. Rub, 331 Ill. App. 3d at 696, citing Dixson, 190 Ill. App. 3d at 376. Generally, when religious affiliation is relevant to potential prejudice, subjects related to religious affiliation are proper subjects of inquiry during voir dire. Congregation of the Passion, Holy Cross Province v. Touche Ross & Co., 159 Ill. 2d 137, 167 (1994).

Here, however, both plaintiff and defendant were Christian ministers; thus questions regarding religious beliefs would be unlikely to reveal bias in favor of one side or the other. Moreover, this case is about false-light-invasion-of-privacy, not religion. There is no evidence that the trial court's conduct prevented the selection of an impartial jury. Therefore, we determine that the trial court did not abuse its discretion when it restricted voir dire with regard to religious matters. Having determined that all of defendant's arguments fail, we conclude that the trial court did not err when it denied defendant's motion for a new trial.

For the forgoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

JORGENSEN, P.J., and McLAREN, J., concur.