2024 IL App (1st) 231413-U

SIXTH DIVISION
September 13, 2024

No. 1-23-1413

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| REV. SARAH ELIZABETH GARCIA, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22 L 425 |
| | ) | |
| REV. MATTHEW FITZGERALD, BENJAMIN | ) | |
| EMMRICH, and ST. PAULS UNITED CHURCH FOR | ) | |
| CHRIST, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Hyman and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We reverse the circuit court's dismissal of plaintiff's claims for breach of contract, defamation, and false light, because she sufficiently pled that (1) defendant St. Pauls United Church for Christ violated the notice provision of its bylaws and (2) defendants Reverend Matthew Fitzgerald and Benjamin Emmrich published statements that could constitute defamation *per quod*.

¶ 2   Plaintiff Reverend Sarah Garcia appeals from the circuit court's dismissal of her second amended complaint (SAC), in which she brought claims for breach of contract, defamation, and false light against defendants St. Pauls United Church for Christ (Church), its Senior Pastor, Reverend Matthew Fitzgerald, and Church council president Benjamin Emmrich (collectively, "Defendants"), following termination of her employment with the Church. On appeal, Garcia contends she sufficiently alleged facts to sustain each claim against a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)) (Code). For the reasons below, we find Garcia sufficiently pled facts to avoid dismissal of a portion of her allegations, and accordingly, we reverse the court's dismissal and remand for further proceedings consistent with this order.

¶ 3                                    BACKGROUND

¶ 4   On January 14, 2022, Garcia filed her complaint against Fitzgerald, Emmrich, and the Church. Therein, she alleged she began working for the Church as Associate Pastor for Children and Youth in August 2013 pursuant to a document referred to as the "Call Letter" by the parties. Garcia attached the Call Letter as Exhibit A to the complaint. In September 2021, Fitzgerald desired to re-open the Church to in-person programs following the shutdowns caused by the COVID-19 pandemic. In response, Garcia "developed several programs to start in person church school in September 2021 with due regard to safety protocols." On September 9, 2021, Garcia met with Fitzgerald and Emmrich, at which time they "summarily fired" her. They provided a "list of alleged deficiencies" and "advised that the reasons for terminating her were that [Garcia] failed to satisfactorily perform her job obligations during the pandemic." They offered her three months of salary as a severance payment, along with $5000 for "vocational consulting," in exchange for her

agreement to characterize the firing as a resignation and "to not disparage the Church or anyone employed by it."

¶ 5    Despite this offer, Fitzgerald and Emmrich "called church members" and informed them Garcia was fired "for poor performance" following an event that constituted "the final straw." Fitzgerald also told "the parishioners and others" that Garcia "failed to plan for Sunday school," which was false. Additionally, on October 2, 2021, Emmrich held a Zoom video meeting that was open to the "general public," during which someone questioned Emmrich about Garcia's firing. He replied that the action was taken due to a history of poor performance and following an appropriate process. On October 3, 2021, Fitzgerald announced Garcia's termination during a Church service, repeating that an appropriate process occurred. Garcia alleged that the references to a firing process were "intended to falsely imply that [Garcia] had regular performance reviews, was advised of the conduct that constituted the alleged poor performance and failed to address or remediate the alleged poor performance." She further alleged these actions violated the Church's Bylaws, which stated that someone in her position would be given "three months' notice of any intended separation." Garcia did not attach the Bylaws to the complaint.

¶ 6    The Call Letter acknowledges the Church hired Garcia on June 5, 2013, and describes her job responsibilities, compensation, and schedule. It does not contain any reference to the Church Bylaws, terms regarding a fixed period of employment, or any discussion of severance.

¶ 7    Defendants moved to dismiss the complaint under sections 2-615 and 2-619 of the Code (see 735 ILCS 5/2-619.1 (West 2020)). Regarding the breach of contract claim, they argued Garcia was an employee at-will per the Call Letter and the employee handbook, and could be terminated at any time, with or without cause. In so arguing, Defendants acknowledged the Church Bylaws, which required three months' notice before either the Church or youth pastor could sever the

3

employment relationship, and stated, "Defendants do not dispute that Plaintiff was not provided three months' notice prior to her termination. However, shortly after Plaintiff's termination she was paid an amount equivalent to her compensation for a three-month period." Defendants also attached an affidavit to this effect. They continued in the motion, "even assuming *arguendo* that the Bylaws comprise part of the purported Contract," Garcia still did not plead a breach of contract claim because she did not properly plead damages. Regarding defamation, Defendants maintained that the complained-of statements were capable of an innocent construction, and thus not defamation *per se*. Additionally, they argued Garcia failed to allege the special damages necessary to state a claim for defamation *per quod* or false light.

¶ 8     Defendants attached the employee handbook and Church Bylaws to the motion.

¶ 9     In her response, Garcia contended that while the employee handbook did not apply because it was never incorporated into her "agreement" with the Church, the same was not true of the Bylaws because the Church admitted the Bylaws applied when it offered her the severance payment. Garcia stated, "Defendants admit through conduct and do not contend that the Bylaws are not part of [Garcia's] Contract."

¶ 10     The circuit court granted Defendants' motion without prejudice and with leave to replead. In so ordering, the court found Garcia's breach of contract claim failed because she did not satisfactorily plead damages. The court further found that the defamation claim (and false light claim by extension) failed because the allegations lacked "the requisite specificity," and cautioned that the innocent construction rule would likely apply to the complained-of statements if Garcia did not "allege significantly more facts."

¶ 11     Garcia then filed her first amended complaint (FAC). She newly alleged that two weeks before Sunday School was scheduled to begin in September 2021, Fitzgerald told two named

4

teachers employed by the Church that Garcia "was being fired for poor job performance." This information was then disseminated to other teachers and staff. Garcia further alleged four named individuals, and other unnamed individuals, were told she was fired for poor performance following the final straw event. Defendants allegedly "spread the lies" via phone calls to a named individual no longer affiliated with the church, and other named individuals who were "former church leaders." She alleged, "Each of the calls was an unprivileged publication to the public of defamatory statements."

¶ 12    Garcia also included new allegations about the Zoom meeting. Specifically, she now alleged that 23 people participated (providing the names of seven), and during the meeting, Emmrich "falsely assured the people on the call the action was taken because [Garcia] had a documented history of poor performance" and falsely stated she "had been warned in accordance with proper church process, failed to [heed] the warning, and persisted in the unacceptable behavior."

¶ 13    Garcia updated her breach of contract claim to now allege that her employment contract included both the Call Letter "and several sections of the Bylaws of the Church which the Church admits are incorporated into the Contract." Due to the alleged breaches of her contract, including violations of notice and privacy provisions in the Bylaws, Garcia alleged she suffered damages including the "[l]oss of the financial and emotional benefit of looking for a new position while actually employed and without the 'story' of her termination in circulation in the general church population"; four months of severance per the "recommendation" of the Illinois Council of the United Church of Christ Congregational (UCCC); three months of salary and benefits she was owed per the Bylaws' notice requirements; "Counseling and other related expenses for her and her young children, which has cost[s] in excess of $20,000"; and "Moving and relocation costs of more

5

than $20,000 for moving expenses and finding a home in some suburb of Chicago, hopefully escaping the effects of the campaign by [Fitzgerald] to disparage [Garcia's] reputation."

¶ 14    Regarding false light, Garcia alleged "[t]he result of the statements made by [Fitzgerald] and [Emmrich] would be to impute to [Garcia] the inability to perform her duties as a minister and indicate a want of integrity necessary for one to hold such a position." As a result, she "suffered damages in the form of lost wages, expense to move to a new community to seek employment, psychological trauma which required counseling and loss of self-esteem."

¶ 15    Regarding defamation, she alleged that the "information conveyed *** injured [Garcia] and adversely impacts her ability to practice her profession and get another position," and she "suffered damages in the form of lost wages, expense to move to a new community to seek employment, counseling to treat psychological trauma *** and loss of self-esteem for both her and her family."

¶ 16    Defendants again moved to dismiss, arguing the breach of contract claim failed because Garcia was "an at-will employee who could be terminated with our without cause at any time," and the "types of damages claimed" were improper. They further contended the Bylaws were not part of the Call Letter, and nothing in the Call Letter indicated an intent to incorporate the Bylaws. Defendants denied admitting the Bylaws were part of Garcia's employment contract. Regarding defamation and false light, Defendants argued Garcia again failed to plead the defamatory statements "with sufficient particularity," and the complained-of statements were still capable of innocent construction.

¶ 17    The circuit court granted Defendants' motion and dismissed the FAC without prejudice. Regarding breach of contract, the court explained that Garcia did not identify a term in the Call Letter that Defendants breached, and the Bylaws were "not incorporated by reference in the

employment contract and *still* [were] not attached" to the FAC. Moreover, the court continued, Garcia's damages allegations were also insufficient because she sought "damages that are not recoverable under a claim for breach of contract." On the defamation and false light claims, the court found Garcia again failed to allege defamatory statements with sufficient particularity and, even assuming they were properly pled, the statements were capable of an innocent construction. Finally, the court noted Garcia failed to allege special damages. The court provided Garcia "one final opportunity to allege a proper cause of action."

¶ 18      Garcia filed a motion for leave to file the SAC. In the motion, Garcia explained the SAC "incorporated" the Bylaws, clarified the terms of employment Defendants allegedly breached, and "refined its claim for damages." Garcia also claimed to include "additional information" to support her false light and defamation claims. The circuit court granted the motion.

¶ 19      In the SAC, Garcia now alleged that the Call Letter was only an "invitation to fill a position in the Church defined by the Bylaws," and that the "employment relationship [was] governed by the Bylaws." Garcia attached the Bylaws, but not the Call Letter, to the SAC. She clarified that after Fitzgerald stated to the two teachers that Garcia "repeatedly failed to perform her job or address criticisms of her work performance," he then "continued his campaign to discredit" Garcia by "disseminating false information to Church members and volunteers" between September 5 and September 8. Regarding the Zoom meeting of October 2, 2021, Garcia now included a footnote promising to produce a list of attendees in discovery. She alleged the Zoom invitation was "provided not only to parishioners, but also the general public, *i.e.*, people who attended St Pauls but may not have been members of the Church."

¶ 20      Garcia's theories for breach of contract consisted of violations of (1) the Bylaws' notice provision per section 9.5, (2) an implied right to her computer and email, (3) an implied right of

7

privacy deriving from section [4.8] of the Bylaws, and (4) the implied right of good faith and fair dealing.

¶ 21    Regarding damages for breach of contract, Garcia listed, "Three months of her salary and housing allowance due based on the Bylaw provisions, which was not paid." Garcia added she lost income "because while she was attempting to mitigate damages, she was refused employment by a local hospital and a crisis intervention service because of the wrongful discharge and statements made by" Fitzgerald. She also could not perform "one specific wedding and several baptisms," but again withheld additional details pending discovery. In the false light portion of the SAC, she newly alleged her damages included three "months of lost wages and housing allowance" and "lost honoraria arising from performing weddings, funerals and baptisms," explaining she, "specifically was not hired because of the statements by a local hospital as a Chaplin and a crisis intervention service as a counselor."

¶ 22    The Bylaws are attached to the SAC and included in the record on appeal. Section 4.8 states, in relevant part, that "deliberations of the Council or Executive Committee regarding specific personnel or their performance reviews shall not be included in the published minutes." Section 9.5 requires, in relevant part, that the Associate Pastor for Youth and Children and "Senior Pastor shall give each other three months' notice of any intended severance."

¶ 23    The SAC included the below-listed statements as the basis for the defamation and false light claims:

1. Fitzgerald's statements to the two teachers prior to Garcia's firing;

2. Fitzgerald's dissemination of the information relayed in those statements to Church members and volunteers between September 5 and 8, including two named individuals;

3. On unknown dates before and after September 9, Fitzgerald and Emmrich called and informed certain Church members, some of whom are named, that Garcia "had failed to plan for and organize in-person Sunday School according to the health and safety concerns attendant to COVID-19 protocols";

4. The "false information was spread far and wide across Chicago land";

5. Emmrich's statements during the October 2, 2021 Zoom meeting;

6. Fitzgerald's statements at the October 3, 2021 Church service; and

7. Per paragraph 64 of the SAC, that Fitzgerlad and Emmrich,

"[U]sed very similar consistent language to convey a message that [Garcia] was incompetent and unreliable to the people specifically identified above and the general public. They said consistently (all of which constituted unprivileged public publication of the statements) to the attendees of the Church Zoom meeting on October 2, 2021, to the general church population in the sanctuary on October 3, 2021, to the Sunday School teachers before Sunday School began, before and after they fired [her], and to individual members of the church identified above:

a. She failed to properly plan for in-person Sunday School taking into account COVID-19 restrictions and the critical need to have in person Sunday School;

b. She consistently, over the course of her time at St. Pauls, failed to conduct herself within proper pastoral boundaries, overshared personal experiences during sermons, in reports and as part of her ministry generally, and acted unprofessionally in meetings;

c. She scheduled her Church obligations during the Pandemic around her personal issues driven by homeschooling her children and refused to return to Church full time in April, 2021;

d. She was warned about the alleged inadequacies on several occasions formally;

e. She ignored the warnings and refused to make changes to her programs or address the other issues; and

f. She failed to properly perform the other obligations of her position consistently after being warned."

¶ 24    Defendants moved to dismiss the SAC, generally arguing that Garcia failed to correct the deficiencies in her earlier pleadings. Additionally, they contended Garcia's breach of contract claim failed because she did not attach the Call Letter to the SAC. They emphasized the Bylaws attached to the SAC were dated November 10, 2019, well after the Church hired her. Regarding false light and defamation, Defendants maintained their arguments regarding lack of specificity, innocent construction, and special damages, and further contended that Garcia "improperly attempt[ed] to bootstrap her defamation claim by asserting in footnotes *** that through a discovery fishing expedition she will be able to supplement facts which [she] can only hope will establish a viable claim for defamation."

¶ 25    The circuit court dismissed the SAC with prejudice. In so ordering, the court explained Garcia's third attempt fared "no better than the previous attempts" because she failed to "be more specific in her allegations." Regarding breach of contract, the court highlighted that Garcia failed to attach the Call Letter to the SAC, but still addressed its contents, reiterating it did not incorporate the Bylaws. The court also stated the Bylaws were only "an internal governance document rather

than a contract" and Garcia "failed to allege she was provided a copy of the relevant [Bylaws] when negotiating her contract and that she relied on the representations made therein." The court further found Garcia did not plead compensable damages because the hiring failures from the hospital and crisis center did not stem from the contract, the salary and housing allowance was related to the Bylaws, not the Call Letter, and the UCCC recommendations had "no foundation whatsoever to this case," while the counseling and moving expenses were "unrecoverable."

¶ 26 Regarding false light and defamation, the circuit court reiterated that absent defamatory *per se* statements, Garcia had to plead special damages, and she again failed to do so. Additionally, each complained-of statement, despite her additions, were still of the category the court previously found capable of an innocent construction.

¶ 27 This appeal followed.

¶ 28                                    JURISDICTION

¶ 29 The circuit court dismissed the SAC on July 17, 2023, and Garcia filed her notice of appeal on August 8, 2023. This court has jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 30                                      ANALYSIS

¶ 31 On appeal, Garcia argues that the circuit court erred in dismissing her three claims as presented in the SAC, specifically (1) breach of contract, (2) defamation, and (3) false light.

¶ 32 The circuit court dismissed the SAC pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2020). On a section 2-615 motion, the court must construe all well-pleaded facts in the light most favorable to the plaintiff and determine whether the pleading states a claim on which relief can be granted. *Tuite v. Corbitt*, 224 Ill. 2d 490, 509-10 (2006). All reasonable inferences will be drawn in favor of the plaintiff. *Id.* at 510. The court will also consider the information

contained in any exhibits or attachments to the pleading. *Fillmore v. Taylor*, 2019 IL 122626, ¶ 66. Where a plaintiff has filed an amended pleading, any exhibits attached to previously dismissed pleadings must also be attached to the current pleading to be considered part of the record. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 30. We review *de novo* the circuit court's dismissal of a complaint pursuant to section 2-615 for failure to state a claim. *project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 18.

¶ 33    Before we address the substance of Garcia's claims, we note because this matter involves a dispute between a church and its former employee, it potentially invokes the doctrine of ecclesiastical abstention. Under this doctrine, courts will not intervene in disputes involving a religious institution if it requires the court to inquire into religious law, canonical text, or the internal governance of the institution. *Taylor v. Evangelical Covenant Church*, 2022 IL App (1st) 210524, ¶¶ 14-16. The court may consider a claim, though, if "neutral, objective, and well-established principles of law familiar to lawyers and judges can be applied." *Id.* ¶ 15. Neither party raised this issue, but the failure to raise it does not grant this court license to violate the doctrine. The resolution of this matter does not require abstention, though, because "where a complaint alleges that a church has violated its own bylaws, a civil court may exercise jurisdiction to decide whether the church has violated its bylaws." *Jackson v. Mount Pisgah Missionary Baptist Church Deacon Board*, 2016 IL App (1st) 143045, ¶ 52. Garcia's claims for defamation and false light are similarly cognizable because they do not implicate Church doctrine or internal governance. See *Duncan v. Peterson*, 408 Ill. App. 3d 911, 915-18 (2010). Accordingly, we will consider the substance of Garcia's claims.

¶ 34    Garcia's first claim is for breach of contract. To plead a breach of contract claim, a plaintiff must allege "(1) the existence of a valid and enforceable contract, (2) substantial performance by

the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. Regarding damages, the plaintiff must allege recoverable damages that "naturally and generally result" from a breach. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 318 (1987); see also *Hanumadass v. Coffield, Ungaretti and Harris*, 311 Ill. App. 3d 94, 100 (1999); *Doe v. Roe*, 289 Ill. App. 3d 116, 130 (1997). Emotional distress damages are generally unavailable on a breach of contract claim unless the parties contemplated that a breach would be so severe that emotional distress was likely to result. *Doe*, 289 Ill. App. 3d at 130. When a breach of contract claim is based on a written document, that document must be attached to the pleading. 735 ILCS 5/2-606 (West 2020). Separate documents may be considered as part of a contract if the parties' intent to incorporate the separate document is clear from the face of the contract. *Dixon v. GAA Classic Cars, LLC*, 2019 IL App (1st) 182416, ¶ 24.[1]

¶ 35 The parties do not dispute that a valid and enforceable contract for employment existed, or that Garcia substantially performed under the contract before her firing. The only contested issues are whether Garcia sufficiently pled breach and damages.

¶ 36 Though Garcia filed three complaints, the SAC is the operative pleading, and the only one we may consider. *Duffy*, 2012 IL App (1st) 113577, ¶ 30. The first two complaints alleged that Garcia's employment contract was the Call Letter, and a breach of the Bylaws constituted a breach of that contract. Garcia attached the Call Letter, but not the Bylaws, to those complaints. In the SAC, however, Garcia significantly altered this claim, now alleging the Call Letter was simply a

---

[1] We note that Defendants argue in their brief that this court only has jurisdiction to review the breach of contract claim against the Church because Garcia failed to timely appeal the circuit court's dismissal with prejudice of the claim as against Fitzgerald and Emmrich. The record supports this argument, and Garcia does not contest this point, and therefore Garcia's breach of contract claim will proceed against the Church alone.

"call" to fill a position, but the Bylaws governed her employment, which the parties intended at the time Garcia accepted the "call." Also in the SAC, beyond the alleged breach of the Bylaws' notice provision, Garcia alleged other theories for breach, predicated on violations of privacy requirements per the Bylaws, her "implied right" to access her computer and email, and the implied obligation of good faith and fair dealing. Garcia attached the Bylaws, but not the Call Letter, to the SAC.

¶ 37 The Bylaws contain section 9.5, which specifically references the position Garcia alleges she accepted with the Church. Section 9.5 requires both parties to provide three months' notice before any severance. Conversely, the Bylaws do not contain any reference to a Church employee's privacy rights. The cited section for this proposition, section 4.8, states only that "deliberations of the Council or the Executive Committee regarding specific personnel or their performance reviews shall not be included in the published minutes."

¶ 38 On this record, we find that Garcia has sufficiently alleged that the Bylaws provided relevant terms of Garcia's employment, terms which the Church then breached by violating the notice requirements of section 9.5. Another panel of this court has treated a breach of contract claim as valid when it was based on the defendant church violating the employment termination procedures contained in that church's bylaws. See *Jackson*, 2016 IL App (1st) 143045, ¶¶ 5-6, 52 (parties made an oral agreement for employment, allegedly with promise to abide by bylaws); see also *Ervin v. Lilydale Progressive Missionary Baptist Church*, 351 Ill. App. 3d 41, 42-43, 46 (2004) (The plaintiff, a reverend, sought an injunction to stop his employer, the defendant church, from firing him without using the procedure established by the church's bylaws). Additionally, in both the general corporate context and the voluntary association context, Illinois courts have found that the adoption of bylaws creates a valid and enforceable contract between the organization at

14

issue and its officers, shareholders, or members. See *Ginter v. Heco Envelope Co.*, 316 Ill. 183, 185-87 (1925); *Fritzsche v. LaPlante*, 399 Ill. App. 3d 507, 523 (2010) ("Corporate bylaws constitute an enforceable contract between the corporation and its shareholders, and both officers and shareholders are bound by the bylaws"); *Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538, 542-43 (2005) (Bylaws for voluntary associations, like some churches, "create a contract between the association and its members."). The principle underlying these cases is consistent—when an organization, like the Church here, endeavors to adopt bylaws, the officials of that organization may be legally compelled to follow those bylaws, depending on the circumstances.

¶ 39    Applying this general principle and construing the SAC in the light most favorable to Garcia, we find she sufficiently alleged that she and the Church agreed to certain terms for her employment that contemplated the Church Bylaws would apply, terms the Church then breached by not providing her three months' notice of the intended severance when Fitzgerald and Emmrich fired her without prior warning. Based on the face of the SAC and the function of bylaws generally in Illinois law, Garcia's allegations that the Church had contractual obligations to her per the Bylaws, and independent of the Call Letter, is enough to state a valid claim at this stage of proceedings. See *Jackson*, 2016 IL App (1st) 143045, ¶¶ 5-6, 52. It is for this reason that Garcia's choice not to attach the Call Letter to the SAC is not fatal, as we need not interpret it to determine whether she sufficiently pled a claim predicated entirely on the Bylaws. See 735 ILCS 5/2-606 (West 2020). To the extent the Church contends the Call Letter obviates its general duty to abide by its Bylaws with respect to Garcia, or the notice provision of the Bylaws was not in effect during

a relevant portion of Garcia's employment, such arguments would require consideration of the underlying facts, which is inappropriate at this stage of the litigation. *Tuite*, 224 Ill. 2d at 509-10.[2]

¶ 40      Garcia's other theories for breach all fail. Most are predicated on a violation of alleged privacy requirements per the Bylaws, but our review of the Bylaws reveals the document contains no such requirements, and a claim in a complaint can be dismissed if positively rebutted by an exhibit. *Metrick v. Chatz*, 266 Ill. App. 3d 649, 653 (1994). The Bylaws also contain nothing from which an implied right of access to Garcia's work computer or email could be intuited, nor does Garcia allege what section contains this requirement. Finally, regarding any alleged breach of the implied right of good faith and fair dealing, to maintain this theory a plaintiff must allege contractual discretion on the part of the opposing party, which that party then exercised in an unfair manner or in bad faith. *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 19. The SAC contains no such allegations.

¶ 41      This leads us to the damages element. Damages recoverable under a breach of contract theory must be either those (1) naturally resulting from a party's breach, or (2) which could have been reasonably contemplated by the parties at the time of formation. *Midland Hotel*, 118 Ill. 2d at 318; *Doe*, 289 Ill. App. 3d at 130. Under these requirements, the only element of damages Garcia sufficiently alleges is the three-month severance payment. In so finding, we note that in previous pleadings and motions, the parties conflict regarding this payment. Most noteworthy, the Church attached to its motion to dismiss the original complaint an affidavit from a Church employee

---

[2] We do not reach the parties' dispute in the briefing over whether Defendants judicially admitted the Bylaws applied to Garcia's employment, as this issue is irrelevant to our resolution of dismissal pursuant to a section 2-615 motion, where we only consider the allegations made in the SAC and the information contained in the exhibit thereto. See *Fillmore*, 2019 IL 122626, ¶ 66.

averring the payment was made. The SAC, however, specifically alleges it was not made, and on a section 2-615 motion, we must take this allegation as true. *Tuite*, 224 Ill. 2d at 509-10.

¶ 42 Garcia's other damages are not recoverable as pled. First, emotional distress damages are generally not available for breach of contract. *Hanumadass*, 311 Ill. App. 3d at 100. Garcia does not sufficiently allege that the parties contemplated such damages at the time of formation or explain why in this context it was generally foreseeable that a breach of a three months' notice requirement would lead to psychological damage requiring counseling. See *Doe*, 289 Ill. App. 3d at 130. Similarly, Garcia does not explain how her moving expenses could have been contemplated by the parties as a consequence of her termination without notice. She also does not allege why the UCCC recommendations for severance apply to her situation, or how a breach of the notice provision related to her inability to secure employment or perform weddings and baptisms.

¶ 43 The Church argues the Call Letter controls and did not incorporate the Bylaws by reference, and thus Garcia cannot refer to an alleged violation of a Bylaw requirement as a theory for breach of contract. See *Dixon*, 2019 IL App (1st) 182416, ¶ 24. This argument fails because the Call Letter is not part of the SAC, and thus we cannot consider its contents for purposes of analyzing a section 2-615 motion to dismiss the SAC. *Duffy*, 2012 IL App (1st) 113577, ¶ 30. Moreover, Garcia is not bound by her allegations in the original complaint and FAC that the Call Letter was her employment contract; those pleadings were unverified, and thus not binding judicial admissions. *Pettigrew v. Putterman*, 331 Ill. App. 3d 633, 641-42 (2002). Given this procedural posture, Garcia was free to allege in the SAC that the terms of the Bylaws applied to her employment, and it was these terms, and not any in the Call Letter, which the Church breached.

¶ 44 Garcia's remaining claims are for defamation and false light. To state a claim for defamation, a plaintiff "must allege sufficient facts showing that (1) the defendant made a false

17

statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused damages." *project 44*, 2024 IL 129227, ¶ 20. Statements can be defamatory *per se* or *per quod*. "A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed," while in a defamation *per quod* situation, "damage to the plaintiff's reputation is not presumed" and "the plaintiff must plead and prove special damages to recover." *Tuite*, 224 Ill. 2d at 501. While Garcia does not delineate which type of claim she pursues, the SAC, given a broad construction, can be understood to raise both. Construction of allegedly defamatory statements, including whether they are capable of an innocent construction, is an issue of law we review *de novo*. *Id.* at 511.

¶ 45    "A complaint for defamation must set forth the words alleged to be defamatory 'clearly and with particularity,' " though the complained-of statements need not be pled verbatim or in quotations. *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470-71 (2003) (quoting *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 163 (1998)); see also *Green v. Rogers*, 234 Ill. 2d 478, 491-92 (2009).

¶ 46    We will first consider defamation *per se*. In a defamation *per se* claim, the plaintiff need only allege that the defendant made false statements that fit into a category the law deems facially defamatory and need not plead or prove damages to recover. *project 44*, 2024 IL 129227, ¶ 20. These categories are "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in his or her profession; and (5) words that impute a person has engaged in adultery or fornication." *Green*, 234 Ill. 2d at 491-92. A statement will not be found defamatory *per se* if it is reasonably capable of an innocent

18

construction. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 11 (1992). In determining whether a statement is capable of an innocent construction, the court in *Chapski* explained "a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted *** it cannot be actionable *per se*." *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982).

¶ 47    To allege a defamation *per quod* claim, the plaintiff must plead "extrinsic circumstances [that] demonstrate an injurious meaning behind the statement." *Rivera v. Allstate Insurance Co.*, 2021 IL App (1st) 200735, ¶ 27 (citing *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87-88 (1996)). The plaintiff must also establish special damages of a pecuniary nature. *Id.*

¶ 48    Finally, to allege a false light claim:

> "First, the allegations in the complaint must show that the plaintiff[] [was] placed in a false light before the public as a result of the defendant's actions. Second, the court must determine whether a trier of fact could decide that the false light in which plaintiff[] [was] placed would be highly offensive to a reasonable person. Finally, the plaintiff[] must allege and prove that the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas*, 154 Ill. 2d at 17-18.

Where a "false light *** claim is based on statements that are not defamatory *per se*, a plaintiff must allege that he suffered special damages." *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 17.

¶ 49    Before considering the merits of these claims, we note that Garcia argues her false light claim can be analyzed separately from her defamation claim. Typically, suits that involve both

false light and defamation claims are analyzed together, with the statements at issue the basis for both. Garcia contends her false light claim can be analyzed separately because false light claims may involve a true statement a defendant uses in a context that places the plaintiff in a false light, while defamation claims require a showing that the complained-of statements are false. Without determining the accuracy of this proposition, we note that Garcia has failed to argue which alleged statements by Fitzgerald or Emmrich would fit within the category of true statements that placed her in a false light. Instead, she lists the same statements for both claims, all of which she alleges are false. Accordingly, the false light claim is dependent on the resolution of the defamation claim, which we turn to now.

¶ 50    Garcia alleges that Fitzgerald and Emmrich made certain statements which all constituted defamation *per se* under the third and fourth categories relating to performance in, and fitness for, one's profession. See *infra* ¶ 23. The circuit court dismissed the defamation and false light claims contained in the SAC on the basis that the allegations were too vague, and even if they were not, the statements were capable of an innocent construction.

¶ 51    We find that while Garcia pled a subset of the alleged statements with sufficient specificity, all such statements were capable of an innocent construction, and Garcia's defamation *per se* claim fails accordingly. First, the catchall allegations in paragraph 64 of the SAC are too vague because they attribute every complained-of statement to all speakers at each alleged incident. This level of abstraction is insufficient to properly place Fitzgerald and Emmrich on notice of what they allegedly said, when, and to whom, and thus are insufficient to form the basis of a defamation claim. *Krueger*, 342 Ill. App. 3d at 470. The same is true of the allegation that Fitzgerald and Emmrich spread false information "across Chicago land." Additionally, the allegation based on the October 3, 2021 Church service is not actionable. The alleged statements only relay the fact of

Garcia's termination and that a process occurred beforehand. Garcia does not explain how such statements are "false." *Green*, 234 Ill. 2d at 491-92.

¶ 52    The allegations that Fitzgerald and Emmrich stated Garcia's work performance was poor and she was fired because she refused to acknowledge and correct it, however, were pled with sufficient particularity.[3] Garcia alleged these statements were made on at least two specific occasions—on a date immediately preceding September 2021 to two specific recipients, and by Emmrich on October 2, 2021, in the Zoom meeting. Garcia also alleged that in a defined time frame of a matter of days, Fitzgerald and Emmrich repeated these statements to church members, including certain named individuals. These allegations are specific enough to be proven at trial and give notice to Fitzgerald and Emmrich of exactly what they are accused of, so they may "properly formulate their answer and affirmative defenses." See *Krueger*, 342 Ill. App. 3d at 470.

¶ 53    Despite this finding, Garcia's defamation *per se* claim still fails because these statements were all capable of an innocent construction. The subject matter of the statements is consistent—Garcia was fired as youth pastor, for poor performance, either generally or in preparing the Sunday School program according to COVID-19 protocols, and after failing to correct her conduct. These statements can be understood as criticism of Garcia's past performance in her role as the Church's youth pastor or in performing the task of preparing the Fall 2021 Sunday School programs per COVID-19 requirements. Such statements are so specific to Garcia's employment circumstances at the Church that they reasonably could be interpreted as suggesting Garcia was not suited to her

---

[3] These correspond to the statements in items 1, 2, 3, and 5, listed *infra* ¶ 23. We note that Defendants argue in passing in their brief that these statements were in the form of opinions, but do not then explain any basis for why or how such an argument, if accepted, should inform our ruling, and thus we will not substantively engage with that argument. See *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11 ("The appellate court is not a depository in which an appellant may dump the entire matter of argument and research.").

role within the Church, and not as a broader commentary on her integrity as a pastor or general ability to fulfill the job requirements of a pastor. Illinois courts have found similar comments on a plaintiff's past work performance capable of an innocent construction, and we find Garcia's statements analogous to these situations. See *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 413 (1996) (statements capable of innocent construction where they could be "understood to mean simply that the plaintiff did not fit in with the organization *** and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future position"); *Antonacci v. Seyfarth Shaw LLP*, 2015 IL App (1st) 142372, ¶¶ 28-30 (statements capable of innocent construction where they addressed the declarant's "working relationship" with the plaintiff, and statements "were specifically confined to the context of [plaintiff's] working relationship with the [declarant] and his fit with [plaintiff's employer]"; *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318 (1993) (statement capable of innocent construction where declarant told the employer's customers the plaintiff had a "lack of performance" at work). Accordingly, the statements do not constitute defamation *per se* under the third and fourth categories.

¶ 54    Garcia cites a series of cases for the broad proposition that statements about a plaintiff's past acts can constitute defamation *per se*, but none of the cited cases address whether statements regarding past work performance were capable of an innocent construction and are thus all distinguishable from the present situation and of much less consequence to our resolution than *Anderson* and its progeny. See *Tuite*, 224 Ill. 2d at 512-13 (statements at issue were contained in a book describing the plaintiff's alleged ties to organized crime and corruption throughout his career, and not descriptions of past job performance); *Kolegas*, 154 Ill. 2d at 11-12 (the supreme court found statements that plaintiff was scamming the public by promoting a fake festival

impugned the plaintiff's integrity and would prejudice future promotions); *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998) (statements at issue were related to allegations of criminal conduct, not job performance); *Duncan*, 408 Ill. App. 3d at 920-22 (no analysis of innocent construction).

¶ 55 Garcia further argues that the context of the statements demonstrates Fitzgerald and Emmrich's intent to destroy her reputation and prejudice her from gaining future employment, but this argument fails because even conceding the relevant statements here *could* have been interpreted as suggesting general unfitness for pastor roles going forward, this does not make the statements defamatory *per se*. Innocent construction is determined on the basis of whether the statement is *capable* of a *reasonable* innocent construction, not the intent of the speaker, and a court must give the statement the innocent construction if it is capable thereof. *Tuite*, 224 Ill. 2d at 504. Our courts have found that statements specifically critical of an employee's past performance, even statements that the employee was incapable of performing the previous job in question, were still capable of an innocent construction and did not constitute defamation *per se*. See *Anderson*, 172 Ill. 2d at 414-15 (collecting cases); see also *Dunlap v. Alcuin Montessori School*, 298 Ill. App. 3d 329, 339 (1998) (Statements by the defendant school that the plaintiff teacher was fired after a "breakdown of trust and confidence" and because the plaintiff was "not satisfactorily performing her duties or carrying out the policies" of the school were capable of an innocent construction because they could be "construed as an assessment of plaintiff's failure to perform well in the School's particular job setting, as opposed to her inability to perform well in other, future positions."). The well-pled, complained-of statements here are all capable of being understood as criticism of Garcia's fitness for her specific role and responsibilities at the Church, even if Fitzgerald's or Emmrich's actual intent in making the statements was as Garcia maintain. In Illinois, such statements are not defamatory *per se*.

¶ 56    Garcia also argues the statements cannot be innocently construed because the Defendants disseminated the statements to the public or "Chicago land," fundamentally placing the comments in a damaging context, and distinguishing this situation with other cases where the statements were made to a specific group of people such as one's co-workers or a prospective employer. See *Anderson*, 172 Ill. 2d at 403 (statements made to a prospective employer); *Antonacci*, 2015 IL App (1st) 142372, ¶ 6 (statements made in email sent to "human resources staff" at plaintiff's employer). This argument is belied by the record, as the SAC only successfully alleges the statements were made to Church members or at a Zoom meeting relating to the Church and participated in by only 23 individuals who attended services at the Church. Garcia did not allege that Fitzgerald or Emmrich made the statements to the press or to officials of other churches, or that the Zoom call was attended by members of the public who had never attended Church services and thus had no interest in who the Church employed. Moreover, Emmrich's statements during the Zoom meeting—that Garcia was fired due to poor performance and after not correcting certain behaviors despite warnings—are sufficiently centered on general past performance that the statements can be reasonably innocently construed, even if made to a wider population than those at issue in *Anderson* or *Antonacci*. See *Dunlap*, 298 Ill. App. 3d at 333, 339 (In a dispute between a fired teacher and a school, statements in a letter sent by the school to the students' parents discussing a "breakdown of trust and confidence" and claiming the teacher was "not satisfactorily performing her duties" were capable of a reasonable innocent construction.).

¶ 57    Having found that the properly pled statements are not defamatory *per se* does not resolve the matter, however, as these statements could also be found defamatory *per quod*. To state such a claim, a plaintiff's allegations must not only satisfy the defamation elements but must also show that while "the defamatory character of the statement is not apparent on its face," it can be shown

with "resort to extrinsic circumstances *** to demonstrate its injurious meaning." *Bryson*, 174 Ill. 2d at 103. This requires a plaintiff to "plead and prove extrinsic facts to explain the defamatory meaning of the statement." *Id.* The plaintiff must also allege special damages of a pecuniary nature. *Rivera*, 2021 IL App (1st) 200735, ¶ 49. Generalized allegations of lost income, damage to one's business, or emotional distress will not suffice to allege special damages, though allegations of a specific lost dollar amount or specific lost business opportunity or customer may suffice. See *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 694-95 (2000) (collecting cases, emphasizing Illinois courts typically find allegations insufficient to plead special damages); but see *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶¶ 60-62; *Becker v. Zellner*, 292 Ill. App. 3d 116, 127 (1997); *Windsor Lake, Inc. v. WROK*, 94 Ill. App. 2d 403, 408-09 (1968).

¶ 58    We find that a subset of Garcia's properly pled defamation allegations are sufficient to sustain a defamation *per quod* claim. There is no dispute that Garcia sufficiently alleged the complained-of statements were false and were published to third parties without a privilege to do so, which brings us to the heightened pleading standards for *per quod* claims on the injury and damages element. First, regarding extrinsic evidence of the injurious meaning of these statements, Garcia included extensive detail on why the comments could be defamatory based on her unique circumstances, including a description of the effects of the COVID-19 pandemic and how any implication that she could not protect her young parishioners in this context would be damaging to both her reputation generally and her work prospects moving forward. If she can prove that the statements likely would be interpreted in this manner, as she alleged, she can demonstrate that the statements were defamatory. *Bryson*, 174 Ill. 2d at 103. Similarly, the allegations regarding the alleged failure of Defendants to conduct the performance reviews they claimed, if proven, could

25

support the proposition that Fitzgerald and Emmrich created a false impression that Garcia was an unprofessional employee who was difficult to manage. *Id.*

¶ 59    Second, we find that Garcia successfully pled certain special damages such that her claim can progress beyond the motion to dismiss stage, albeit limited to those damages. Specifically, Garcia pled she lost two specific job opportunities due to the complained-of statements, and she identified the prospective employers—a local hospital and a crisis intervention service. The loss of a specific customer or business opportunity has been found to constitute a sufficiently specific allegation for special damages, and we find Garcia's allegation fits within that model as accepted by prior courts. See *Tunca*, 2012 IL App (1st) 093384, ¶¶ 60-62; *Becker*, 292 Ill. App. 3d at 127. These offers are subject to proof of a specific dollar amount, which would be an appropriate element of damages if Garcia can prove she lost the job opportunity specifically due to the complained-of statements. Similarly, Garcia alleged she could not perform a wedding service and several baptisms, all of which are subject to specific pecuniary proof and may proceed. *Tunca*, 2012 IL App (1st) 093384, ¶¶ 60-62; *Windsor Lake*, 94 Ill. App. 2d at 408-09. We find, however, that Garcia's other damages allegations do not meet the special damages pleading threshold. The broad allegation of general "lost honoria" is a quintessential example of the type of damage allegation insufficient to plead special damages. See *Kurczaba*, 318 Ill. App. 3d at 694-95. Similarly, Garcia does not provide details linking her moving expenses to the effects of the defamatory statements, a problem that also defeats her pursuit of psychological counseling costs. Also her lost wages are not recoverable for defamation, as she does not allege the statements caused her firing.

¶ 60    Lastly, because we find Garcia sufficiently pled the elements for defamation *per quod*, her false light claim also survives as limited to those specific statements and elements of damages.

26

The SAC contains allegations as to the remaining false light elements, and Defendants do not contend otherwise. As discussed above, if Garcia can prove through extrinsic evidence the allegation that the statements, taken in context, imputed her with the inability to protect her young parishioners, the highly offensive potential for someone whose career involves just that is readily apparent. And the SAC is full of allegations that Fitzgerald and Emmrich knew their comments were false and specifically made them to damage Garcia's reputation, which suffices to allege actual malice. See *Kirchner v. Greene*, 294 Ill. App. 3d 672, 682-83 (1998).

¶ 61                                    CONCLUSION

¶ 62    Garcia's breach of contract claim, as limited to (1) breach of the notice provision of the Bylaws, (2) the pursuit of the severance payment as the only element of damages deriving therefrom, and (3) against the Church as the lone defendant, was sufficiently pled and may proceed. Regarding her claims for defamation and false light, certain complained-of statements were pled with sufficient specificity, but none of these statements constitute defamation *per se* because they are all reasonably capable of an innocent construction. Garcia, however, sufficiently pled that these statements could constitute defamation *per quod* and sufficiently pled certain of her sought-after damages, such that the claims for defamation *per quod* and false light may go forward on the limited bases described above. Accordingly, we reverse the circuit court's dismissal and remand this matter for further proceedings consistent with this order.

¶ 63    Reversed and remanded with instructions.